Bohun B. KINLOCH, Jr., Plaintiff,

v.

The NEWS AND OBSERVER PUBLISH-
ING COMPANY, Defendant.

Civ. A. No. 2160.

United States District Court,
E. D. North Carolina,
Raleigh Division.

June 3, 1969.

John V. Hunter, III, Raleigh, N. C., for plaintiff.

William C. Lassiter, Raleigh, N. C., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, District Judge (sitting by designation).

This action for libel stands on the defendant's motion for summary judgment. Finding that there is no material dispute on any genuine issue of fact, the motion must be sustained for the reasons herein stated.

The plaintiff was a graduate student at North Carolina State University and, at the same time, was the sole stockholder of a corporation known as The Scene, Ltd., which corporation operated a discotheque-type night club in Raleigh, North Carolina. As a result of various

Alcoholic Control Board violations over a period of time at The Scene, together with complaints from neighbors, a citation containing six charges was issued and directed to The Scene and, on May 30, 1967, a hearing was conducted before an Alcoholic Control Board hearing examiner.

At approximately the same time the night club closed for the summer months due to the loss of student business from the State University. We do not reach the issue of special damage, if any, and whether an alleged libelous statement relative to The Scene is actionable by this plaintiff.

Apparently no newspaper reporter attended the hearing on May 30, 1967. In due time the hearing examiner filed his report and, on August 14, 1967, a review of the hearing examiner's report was fully argued by the plaintiff-permittee and his attorney before the full Alcoholic Control Board.

On the following day, August 15, 1967, the following story appeared in the defendant's newspaper:

> "RALEIGH NIGHT SPOT LOSES
> BEER PERMIT FOR 30 DAYS
> "By Jim Lewis
>
> "The Scene Ltd., a Raleigh night spot that features go-go girls and has been described by Raleigh police as a place where narcotics are used, lost its permit Monday to sell beer for 30 days.
>
> "The State Board of Alcoholic Control ordered the temporary suspension of The Scene's beer permit which was issued about a year ago to Bohun Baker Kinloch, Jr., a 32-year-old doctoral candidate in genetics at N. C. State University.
>
> "ABC officers recommended revocation of the beer permit held by the owner of the night spot at 4 Faircloth St., near the intersection of Hillsborough Street and Clark Avenue.
>
> "Detective Edwin D. Whitley of the Raleigh Police Department had testified before an ABC hearing officer that he 'has frequently seen an individual

generally reported and believed to be a dealer in marijuana at The Scene.'

" 'There have been complaints as to the possession and use of narcotics at The Scene,' he said.

"Kinloch denied the allegations made by the police officer and testified that he had no knowledge of either the use or possession of narcotics at his establishment.

"The detective's testimony came to light Monday when the State ABC Board reviewed The Scene's appeal to lift a revocation of its beer permit.

"ABC officers had testified that there were cases of affrays, loitering, disorderly, drunken and boisterous conduct and that loud noises often emanated from the night spot. Neighbors often complained about traffic created by The Scene's clientele.

"Det. St. Alvin A. Bunn of the Raleigh Police Department testified that 'certain young females who wear very brief costumes and dance on an elevated stand' are featured at The Scene.

"Det. Whitley said that some waitresses at the establishment have been charged with larceny and two go-go dancers have court records. Det. Bunn described the night spot's reputation in the neighborhood as 'poor.'

"ABC officers also contended that The Scene does not qualify for a beer license because it sells only beer and gives away peanuts.

"State law provides that an establishment must sell soft drinks, food or other items for public consumption before it is eligible to receive a license to sell beer.

"Kinloch, who was represented by Raleigh attorney John V. Hunter, Jr., told the ABC board that he considered the recommendation to revoke his beer permit 'a gross breach of justice' because his wife and he had operated 'a decent and respectable business since we started' in March of 1966.

"The Scene has been temporarily closed for business and personal reasons since June 1, Kinloch told the board.

"He said that he 'can't afford to have my reputation damaged.' He explained that he expected to receive a PhD. degree ·from N. C. State in December. The Charleston, S. C., native earned degrees from the University of Virginia and N. C. State.

"He said that The Scene represents an investment of about $16,000 and the ABC board would be performing a 'gross miscarriage of justice' if the business lost its beer license indefinitely."

Plaintiff contends that the words published were untrue, false and defamatory. Additionally, it is said that certain words are false in that they were not uttered by the persons to whom they are attributed.[1]

The parties agree that the article was based upon what the reporter heard at the hearing on August 14, 1967, and his reading of the hearing examiner's report entitled "Findings of Fact and Recommendations." While there was a transcript of the hearing on May 30 before the examiner, it is admitted that the reporter did not have the same before him when the article was written.

The defendant, in its motion for summary judgment, argues that (1) the published article was qualifiedly privileged as a report of public governmental proceedings and records, and (2) the published words are not *per se* libelous "of and concerning the plaintiff," and

---

1. The article states that The Scene "has been described by Raleigh police as a place where narcotics are used." Detective Whitley had said that he had "frequently seen an individual generally reported and believed to be a dealer in marijuana at The Scene."

Further complaint is made with respect to that portion of the news article which recites "ABC officers had testified that there were cases of affrays, loitering, disorderly, drunken and boisterous conduct and that loud noises emanated from the night spot." It is contended that the falsity lies in reference to testimony by "ABC officers" with respect to "affrays," "disorderly," and "boisterous conduct."

are not actionable in the absence of a showing of special damages and malice.

One of the problems involved here is that the news report specifically states that certain statements were made by police and ABC officers regarding The Scene, but the faulty equipment used to record the verbatim testimony of witnesses at the evidentiary hearing on May 30 left substantial gaps in the verbatim transcript. The hearing examiner, Assistant Director A. E. Leake, filed his official report in which he summarized the testimony. When we examine the hearing examiner's "Findings of Fact and Recommendations" together with such portions of the testimony which were capable of being transcribed, it reflects substantially the same information and testimony as was reported in the controversial news article.

As to the possession and use of narcotics at The Scene, the record discloses a letter from R. E. Goodwin, Captain of Detectives, to Ray Brady, Chairman of the ABC Board, stating in part "we have had several reports that marijuana and other pep type pills might be distributed at this club." On cross-examination of Detective Whitley there appears in the transcript (pp. 24–26) of the May 30 hearing: "We had information that a person that was at The Scene, which was a frequent visitor and which the times we had gone to the Scene we had seen this person there, was selling marijuana." Thereafter, Detective Whitley testified that, on one occasion, the police had taken action.[2]

When the report of the hearing examiner was filed, it disclosed Whitley's testimony as follows: " * * * that there have been complaints as to the possession and use of narcotics at The Scene." When asked in his deposition as to what Whitley said, the hearing examiner testified: "Detective Whitley on direct examination gave some testimony with reference to some individual

who was reported—and I believe he used the language 'generally known'—to be a pedler (sic) of some form of narcotics, or marijuana I believe, as hanging out around there a good deal."

While there is a technical difference in wording, we think that the article fairly places in the proper prospectus the testimony given at the May 30 hearing. Under the authorities hereinafter cited, this is all that is required in the absence of actual malice, even though the statement may be false and defamatory.

Turning to the alleged libelous statements regarding ABC officers reporting instances of affrays, disorderly and boisterous conduct, we find evidence of same in the transcript of the May 30 hearing from Detective Whitley (tr. pp. 16, 17, 19), Detective Bunn (tr. pp. 28–29), ABC officer Wiggins (tr. pp. 35–39, 42–43), and other witnesses who were neither police nor ABC officers but who corroborated their testimony. It is, in our opinion, of no consequence that the published article attributed these statements to ABC officers when, with the exception of ABC officer Wiggins, they were made by police officers.

Plaintiff has filed a counter-affidavit stating that "Mr. Whitley did not state at the hearing that he had 'frequently seen an individual generally reported and believed to be a dealer in marijuana at The Scene,' and did not state at the hearing that 'there have been complaints as to the possession and use of narcotics at The Scene.'" The counter-affidavit goes further and states, "At no time in any hearing before the North Carolina ABC Board involving The Scene, Ltd. did any ABC officers testify that there had been cases of affrays, or of disorderly or boisterous conduct."

Despite this counter-affidavit, we are of the opinion that, where a hearing examiner files an official report such

---

2. Detective Whitley, on cross-examination, was asked and responded as follows:

"Q. You stated I believe that you had had some complaints about marijuana and pep-type pills?

"A. Yes, sir, that is correct."

as the "Findings of Fact and Recommendations" as here found—all done in a quasi-judicial capacity—a newspaper reporter may rely upon that report as being substantially accurate under the doctrine of conditional or qualified privilege. It is not material that the reporter failed to preface his statement to the effect that the hearing examiner "found" that a certain individual testified in a particular manner. This is especially true where, as here, the verbatim transcript lends support to the examiner's findings, and the quoted police officer has said that the news article "contains a substantially accurate and correct report of [his] testimony before the Hearing Officer, A. E. Leake, on May 30, 1967." Leake testified by deposition to the same effect. Such depositions may properly be considered on a motion for summary judgment. Pilkenton v. Kingsport Publishing Corp., 270 F.Supp. 315 (W.D.Va., 1967), aff'd 395 F.2d 989 (4 Cir., 1968). The mere fact that plaintiff's counter-affidavit denies that Whitley made the statements attributed to him in the exact words as they appeared in the article does not alter the fact that the report was *substantially* accurate.

■ There is no merit to the argument that the published article was not fair and complete. It covered the pertinent bases of the examiner's recommendation and plaintiff's statement to the full Board at the August 14 hearing. The transcript of the May 30 hearing consumes 121 pages and the examiner's report is a single-spaced, typewritten document consisting of 21 pages. It was never contemplated that any newspaper could publish more than the highlights of any administrative or judicial proceeding. In the context of this action for libel, there is no room for dispute as to whether this article was reasonably fair and complete.

Plaintiff argues that there is evidence of malice which destroys the conditional privilege. It is said:

"* * * that the publication complained of treating three separate hearings as if they were one, quoting the Hearing Examiner's findings as direct quotations from the testimony of witnesses, alluding to testimony neither given by witnesses nor said by the hearing officer to have been given by them, eliminating all testimony on cross-examination of witnesses unfavorable to the plaintiff, and eliminating all evidence favorable to the plaintiff other than portions of his own statement at the hearing before the full ABC Board—was not only unprivileged, but was made with actual malice * * *"

■ There is no suggestion of personal ill-will. Without agreeing that counsel's contention is factually correct, the holding that the article is substantially accurate, fair and complete negatives an inference of malice which might conceivably be drawn from the factors urged by plaintiff's counsel. Mere failure to retract a story which is substantially accurate, fair and complete cannot be regarded as evidence of malice.

■ New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), dealt with publications concerning public officials. *A fortiori*, there is a public interest in having free access to knowledge of public activity. The First Amendment imposes limitations upon malice. We think it clear that no issue of malice could be submitted to a jury in this case. *Cf.* New York Times Co. v. Connor, 365 F.2d 567, 577 (5 Cir., 1966).

■ It is quite true that issues such as those raised herein are ordinarily for the jury but, where there is no substantial issue of fact, summary judgment is appropriate. Piracci v. Hearst Corp., 263 F.Supp. 511 (D.C.Md., 1966); Pilkenton v. Kingsport Publishing Corp., supra.

■ The law of North Carolina, which controls this case, is equally clear. Publication of matters of public interest is conditionally privileged if fair, accurate, complete and not published for

the purpose of harming the person involved, even though the information contained therein is false. Gattis v. Kilgo, 140 N.C. 106, 52 S.E. 249 (1905); Herndon v. Melton, 249 N.C. 217, 105 S.E.2d 531 (1938). The plaintiff is required to show that the defendant used the privileged occasion artfully and knowingly to falsely defame the plaintiff. Ramsey v. Cheek, 109 N.C. 270, 13 S.E. 775 (1891); Ponder v. Cobb, 257 N.C. 281, 126 S.E.2d 67, 78 (1962).

While perhaps inapposite to the facts of this case, it is said that the defense of privilege in defamation cases rests upon the idea that conduct which otherwise would be actionable is an avoidance of liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of an uncompensated harm to the plaintiff's reputation. Alexander v. Vann, 180 N.C. 187, 104 S.E. 360 (1920); Prosser, Torts, 796 (3 Ed., 1964).

The law does not require absolute accuracy in reporting. It does impose the word "substantial" on the accuracy, fairness and completeness. It is sufficient if it conveys to the persons who read it a substantially correct account of the proceedings. Restatement, Torts, section 611, comment (d). We believe that there can be no dispute as to the admitted facts in this case.

There are alternative grounds asserted by defendant in its motion for summary judgment which we deem it unnecessary to consider in light of the holding above.

## FINAL ORDER

Upon consideration of the defendant's motion for summary judgment, and for reasons stated in a memorandum this day filed, it is

Ordered that said motion for summary judgment be, and the same hereby is, sustained, and this action is ordered dismissed with taxable costs assessed against the plaintiff,

To which action of the Court the plaintiff excepts.