**Arthur H. BERNDTSON, Petitioner,**

v.

**Honorable Oren R. LEWIS, United States District Judge, Respondent.**

**No. 71–1043.**

United States Court of Appeals, Fourth Circuit.

Aug. 8, 1972.

Alan S. Rosenthal, Jeffrey Axelrad, Attys., U. S. Dept. of Justice, Washington, D. C., for petitioner.

Before BOREMAN, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

MEMORANDUM AND ORDER

CRAVEN, Circuit Judge:

This is a second petition for a writ of mandamus filed by Captain Berndtson to require the United States District Court to dismiss an action for libel brought against him by Lieutenant Commander Marcus A. Arnheiter.[1] We denied the

---

1. After being relieved of command of the USS Vance in 1966, Arnheiter told CBS television news that "Flag Officers have

told me that the reason the Navy is attempting to sell off this case is basically to protect the errors in judgment of some

first petition without prejudice to the right of petitioner to renew his motion for summary judgment in the district court after completion of discovery. Berndtson v. Lewis, No. 71–1043 (February 25, 1971). In lieu of discovery, the parties have filed a stipulation of facts accompanied by numerous exhibits and renewed their respective motions for summary judgment. The district court again refused to grant summary judgment for the petitioner because he inferred from the stipulations that Captain Berndtson was not ordered to give the interview from which the alleged libel stemmed and, while giving the interview, was not acting within the outer perimeters of his line of duty, rendering Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), inapplicable. In addition, he thought that Navy regulations had not been complied with in authorizing or in giving the interview.

The agreed upon facts include these:

On November 25, 1967, the immediate office of the Secretary of the Navy received a request from the Columbia Broadcasting System (CBS) for a Navy spokesman to answer questions concerning the relief from command of Lieutenant Commander Marcus A. Arnheiter, United States Navy.

Rear Admiral (then Captain) Thompson personally advised the Secretary of the Navy, Mr. Paul R. Ignatius, that CBS had requested permission to interview a Navy spokesman concerning the Arnheiter case. The Secretary stated that he was not personally available for the interview; but he felt that an interview would be appropriate, and he directed Captain Thompson to designate the most qualified person available as spokesman for the Navy.

Lieutenant Commander Arnheiter's relief from command had been under the specific cognizance of the Bureau of Naval Personnel, and it was Captain Thompson's opinion that the Bureau could probably furnish a spokesman for the Navy. Accordingly, Captain Thompson telephoned the Office of the Chief of Naval Personnel. Captain Thompson did not speak personally to the Chief of Naval Personnel, Vice Admiral Benedict J. Semmes, Jr., United States Navy, at this time, but advised a member of his immediate staff that it had been decided that the Navy should furnish a spokesman for interview by CBS concerning the Arnheiter matter, and that Vice Admiral Semmes should designate the most qualified person available to give the interview.

Captain Thompson also advised the Office of the Chief of Information, Navy Department, of the request from CBS.

Captain Thompson approved the choice of defendant to give the interview and was present during the entire interview.

The request from CBS for an interview was deemed to be appropriate by the Chief of Naval Information. Compliance with the request for a Navy spokesman was recommended by the said Chief of Naval Information. The request and recommendation were communicated to Vice Admiral Semmes in his official capacity as Chief of Naval Personnel and a discussion was conducted with various members of his staff in his office at the Navy Annex, Arlington, Virginia, as to the appropriate position and grade of the individual to be selected as the Navy spokesman for the interview. It was decided at that discussion that the individual most familiar with

---

of my seniors." Berndtson's alleged libel consisted of the following statement, also broadcast nationally over CBS television news:

> I am not aware of any mistakes that were made in this case by any senior officer. I know that all responsible seniors who were required to review this

record concurred in the relief of Lt. Cmdr. Arnheiter at the time.

Arnheiter alleges that one of the reviewing officers recommended that Arnheiter's relief from command not be sustained and that he be reinstated, and that Berndtson knew of this.

the facts of the case of Lieutenant Commander Arnheiter was Captain Arthur H. Berndtson, United States Navy, who at that time held the official position of Assistant Chief of Naval Personnel for Performance. During the decision as to the appropriate Navy spokesman, Captain William Thompson, United States Navy, then serving as Public Affairs Adviser to Secretary of the Navy Paul R. Ignatius, participated in his official capacity on behalf of the Secretary of the Navy, and accompanied Captain Berndtson at the inverview.

On or about November 25, 1967, defendant was summoned to a meeting at the Office of the Chief of Naval Personnel. In addition to defendant, the Chief of Naval Personnel, Vice Admiral Benedict J. Semmes, Jr., and the Deputy Chief of Naval Personnel, Rear Admiral B. M. Strean, United States Navy (now a retired Vice Admiral), were present in the office. At this meeting, defendant was informed that the Columbia Broadcasting System (CBS) had requested permission to interview a Navy spokesman concerning Lieutenant Commander Arnheiter's detachment for cause. Vice Admiral Semmes and Rear Admiral Strean sought defendant's opinion concerning the request. Defendant recommended that such an interview would not be in the Navy's best interests and should not be granted. Defendant indicated his personal reluctance to make a public statement and appearance, but that he did have a detailed knowledge of the Arnheiter matter and would give the interview if, in the judgment of his superiors, it was deemed necessary. Shortly after defendant returned to his office, Rear Admiral Strean telephoned him and advised him that he had been selected to give the interview.

We think the foregoing stipulations compel an inference that the defendant was specifically ordered to give the interview in question and that the order for the interview originated with the Secretary of the Navy. The language of command is not always peremptory. Courtesy may veil it in the form of a suggestion, but an intelligent officer will note from whence comes the suggestion and act accordingly. Had the Secretary of the Navy uttered the alleged libel, he would be clothed with absolute immunity, and we think this immunity extends to the conduct of Captain Berndtson in compliance with the Secretary's instructions.

In Barr v. Matteo, *supra*, the Acting Director of the Office of Rent Stabilization issued an alleged libelous press release. The Supreme Court sustained the defense of absolute official immunity on the grounds that the publication of the press release was an appropriate exercise of the discretion of the Acting Director. The underlying rationale for not restricting the scope of official immunity to executive officers of cabinet rank was said to be that,

> The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy.

> . . . . . .

> It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to "matters committed by law to his control or supervision," Spalding v. Vilas, supra (161 U.S. [483], at 498, 16 S.Ct. 637, [40 L.Ed. 780])—which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits.

Barr v. Matteo, 360 U.S. at 572–574, 79 S.Ct. at 1340. We think that the Secretary of the Navy delegated to Berndtson the duty to give the interview, and that Captain Berndtson was

obliged to give it. It is not Captain Berndtson's official position which is determinative. In giving the interview he spoke for the Secretary, which brought the interview within the scope of official immunity granted the Secretary of the Navy in the discharge of his duties.

The district court also thought that Captain Berndtson had not followed certain naval regulations referred to by the district court as follows:

NAVSO P–1035, § D–1401–8, provides that participation by naval personnel in radio and television programs will not be offered or approved without specific permission of the Chief of Information and the Department of Defense.

NAVSO P–1035, § D–1102–3, provides that Public Affairs officers and officers in command will ensure that official releases are free of libelous or slanderous statements. (Individual Navy personnel, their commanding officers and Secretary of the Navy, may be named personally as defendants in a civil action for libel.)[2]

We think that the specific orders of the Secretary of the Navy, concurred in by the Chief of Naval Personnel and executed by the Special Assistant to the Secretary of the Navy for Public Affairs, is a sufficient compliance with regulation NAVSCO P–1035, § D–1401–8. The Secretary of the Navy outranks the Chief of Information of the Navy Department and is himself a ranking civil officer of the Department of Defense ex officio.

Even if, however, it be conceded that appellee's conduct in releasing information to the press concerning the Tower 4 collapse was not in technical compliance with applicable Air Force regulations, we think it clear that the Supreme Court in Barr v. Matteo, supra, "expressly rejected a rigid scope of duty, as literally prescribed by rule or regulation, in favor of a more generalized concept of line of duty." Preble v. Johnson, supra, note 2, 275 F.2d [275,] at 278.

Denman v. White, 316 F.2d 524, 529 (1st Cir. 1963). NAVSCO P–1035, § D–1102–3 has no application since the question presented is whether the statement was clothed with official immunity, not whether it contained libelous matter.

The policy reasons for the rule of official immunity have been stated by Judge Learned Hand as follows:

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.

Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949).

Captain Berndtson is entitled not only to immunity from an assessment of damages after trial; he should also be protected from the harassment, inconvenience and apprehension inherent in litigation. This sort of case is especially appropriate for interlocutory appeal under 28 U.S.C. § 1292(b), but none was sought. Even so, we would be inclined to grant the unusual writ of mandamus in order that the rationale of Barr v. Matteo, *supra,* be given effect. *Cf.* Matter of Skinner & Eddy Corp., 265 U.S. 86, 44 S.Ct. 446, 68 L.Ed. 912 (1923).

---

2. These excerpts are from the opinion of the district court.

We need not issue the writ, however, since we are certain that, on remand, the district court will issue an order consistent with our views.

Remanded.