William TRERICE, as personal representative of the Estate of Paul Anthony Trerice, deceased, Appellant,

v.

Daryl L. SUMMONS, Appellee.

William TRERICE, as personal representative of the Estate of Paul Anthony Trerice, deceased, Appellee,

v.

Daryl L. SUMMONS, Appellant.

Nos. 84–1477, 84–1488.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1985.

Decided Feb. 22, 1985.

Peter J. Kelley, Ann Arbor, Mich. (Julius W. McKay, Columbia, S.C., on brief), for appellant.

Glen E. Craig, Asst. U.S. Atty., Columbia, S.C. (Henry Dargan McMaster, U.S.

Atty., Columbia, S.C., on brief), for appellee.

Before RUSSELL and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

CHAPMAN, Circuit Judge.

Appellant William Trerice, plaintiff below, is the personal representative of the estate of Paul Trerice, an enlisted man in the United States Navy, who died at sea aboard the *USS Ranger* on April 14, 1981, while on active duty. Plaintiff brought this action against Daryl L. Summons, an enlisted man acting in a supervisory capacity and on active duty aboard the *USS Ranger,* for monetary damages because of Trerice's death. Plaintiff alleged that defendant violated 42 U.S.C. §§ 1985(3) and 1986 and Trerice's constitutional rights. Defendant moved to dismiss the action under Rule 12(b)(1), (2), or (6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The district court dismissed the complaint on the basis of an intramilitary immunity found in *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). Plaintiff appealed. We affirm.

## I

Approximately eight days before his death, Trerice was tried at a Captain's Mast for a minor infraction and sentenced to confinement aboard ship for an undetermined period of time. Trerice apparently was placed on a limited diet of bread and water and required to perform rigorous and exhausting physical exercises. As a result, he died. After a Naval investigation and trial, defendant was court-martialed and convicted of maltreatment and assault.

Plaintiff alleged that defendant (1) motivated by discriminatory animus, conspired with others to deprive Trerice of his rights under the Constitution and laws of the United States in violation of 42 U.S.C. § 1985(3); (2) deprived Trerice of those rights either actively, or by failing to act when he knew that others were going to act, in violation of 42 U.S.C. § 1986; and (3) violated his federal common-law rights by assaulting Trerice in requiring excessive physical activity of him or by failing to stop others from subjecting him to excessive physical activity. The district court held that *Chappell* created an intramilitary immunity which required the dismissal of all three causes of action. The district judge correctly dismissed the third cause of action because of the intramilitary immunity found in *Chappell.* We also agree with the dismissal of the first and second causes of action but for reasons different from those specified by the district court.

## II

In *Chappell* the Supreme Court extended the *Feres* doctrine[1] to bar claims brought directly under the Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Investigation,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), by enlisted military personnel to recover damages from a superior officer for alleged constitutional violations. *Chappell,* 462 U.S. at 304–05, 103 S.Ct. at 2367–68. The Court stated:

Chief Justice Warren had occasion to note that "our citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes." ... This Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service. *See, e.g., Brown v. Glines,* 444 U.S. 348 [100

1. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

S.Ct. 594, 62 L.Ed.2d 540] (1980); *Parker v. Levy,* 417 U.S. 733 [94 S.Ct. 2547, 41 L.Ed.2d 439] (1974); *Frontiero v. Richardson,* 411 U.S. 677 [93 S.Ct. 1764, 36 L.Ed.2d 583] (1973). But the special relationships that define military life have "supported the military establishment's power to deal with its own personnel. The most obvious reason is that courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have." ...

We hold that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations.

*Chappell,* 462 U.S. at ——, 103 S.Ct. at 2367–68 (citations omitted).

Plaintiff argues that, in stating that military personnel are not barred from all redress in civilian courts for constitutional wrongs, the Supreme Court left open the possibility of a cause of action for a constitutional wrong in an extreme case. Plaintiff maintains that this is one of those extraordinarily rare classes of cases for which a cause of action for a constitutional violation should be allowed. Plaintiff, however, misconstrues the Supreme Court's meaning.

The Supreme Court cited three cases as examples of cases where military personnel still have access to civilian courts for constitutional wrongs: *Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); and *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). None of these cases involve suits for damages by one enlisted man against another in a supervisory capacity. *Brown* involved a first amendment attack on Air Force regulations requiring approval of a commanding officer for circulation of petitions on base; *Parker* arose in the habeas corpus context and was a vagueness challenge to criminal provisions of the Unified Code of Military Justice; *Frontiero* was an equal protection attack on statutes which discriminated against service women in the computation of military benefits.

In *Chappell* the Supreme Court was concerned with the unique relationship between the government and military personnel and the peculiar and special relationship of the soldier to his superiors. *Chappell,* 462 U.S. at 300, 103 S.Ct. at 2365. The court stated:

> In the civilian life of a democracy many command few; in the military, however, this is reversed, for military necessity makes demands on its personnel "without counterpart in civilian life." The inescapable demands of military discipline and obedience to orders cannot be taught on battlefields; the habit of immediate compliance with military procedures and orders must be virtually reflex with no time for debate or reflection. The Court has often noted "the peculiar and special relationship of the soldier to his superiors," and has acknowledged that "the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty...." This becomes imperative in combat, but conduct in combat inevitably reflects the training that precedes combat; for that reason, centuries of experience has developed a hierarchical structure of discipline and obedience to command, unique in its application to the military establishment and wholly different from civilian patterns. Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment.

*Id.* In *Chappell* the Supreme Court relied on the analysis in *Feres* to reach its holding that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations. The Court recognized that its decision in *Feres* is best explained " 'by the "peculiar and special relationship of the

soldier to his superiors, [and] the effects on the maintenance of such suits on discipline ...."'" *Chappell,* 462 U.S. at 300, 103 S.Ct. at 2365 (citations omitted).

These same concerns govern our decision in this case. Here, a strong relationship existed between the military discipline system and the alleged constitutional violations. Trerice and the defendant were both active duty aboard the *USS Ranger.* The *Ranger,* a naval vessel, was at sea at that time. The alleged violations occurred after Trerice was tried and sentenced for an infraction of military rules. This case directly involves matters of discipline and the unique relationship between the government and the military and between enlisted men and others acting as their superiors.

■ This case also calls into question the disciplinary decisionmaking process used on board a naval vessel at sea. This is an area into which this court refuses to delve without overwhelming justification. The concerns discussed by the Supreme Court in *Chappell* outweigh the reasons advanced by plaintiff as justification for a civilian court interfering in military matters. Accordingly, for these reasons, the district court correctly dismissed this cause of action under *Chappell. See Mollnow v. Carlton,* 716 F.2d 627 (9th Cir.1983); *Gaspard v. United States,* 713 F.2d 1097 (5th Cir.1983).

Plaintiff argues further that he has a valid cause of action for the intentional tort of assault under *Wilkes v. Dinsman,* 48 U.S. (7 How.) 89, 12 L.Ed. 618 (1849), 53 U.S. (12 How.) 389, 13 L.Ed. 1036 (1851).[2] In *Wilkes* the Supreme Court held that a superior does not have any immunity from an intentional tort action brought against him by an enlisted man "for acts beyond his jurisdiction, or attended with circumstances of excessive severity, arising from ill-will or a depraved disposition, or a vindictive feeling...." *Id.,* 48 U.S. (7 How.) at 130, 53 U.S. (12 How.) at 401.

Plaintiff, however, failed to allege a cause of action for the intentional tort of assault. Plaintiff only could have alleged a cause of action for a common law tort in the third cause of action because plaintiff based the first two causes of action on §§ 1985(3) and 1986, respectively. But, for the third cause of action, plaintiff alleged that the jurisdictional basis was 28 U.S.C. § 1331(a), federal question jurisdiction, and that the cause of action was filed pursuant to federal common law. The district court correctly construed this to allege a *Bivens*-type claim which is barred by the intramilitary immunity. *Chappell,* 462 U.S. at 303–04, 103 S.Ct. at 2367.

■ Even assuming that plaintiff's third cause of action is for assault, he cannot rely on *Wilkes* to bring this cause of action. Plaintiff failed to allege in his complaint that the defendant had acted beyond his jurisdiction or that the defendant had acted because of ill will, or a depraved disposition, or vindictive feeling, a necessary requirement for *Wilkes.* Furthermore, *Feres* itself is a bar to any common law tort claims. *Mollnow v. Carlton,* 716 F.2d 627, 628 (9th Cir.1983); *Bass v. Parsons,* 577 F.Supp. 944 (S.D.W.Va.1984); *Sigler v. LeVan,* 485 F.Supp. 185 (D.Md.1980). In *Mollnow* the Ninth Circuit held:

> The common law tort claims were also properly dismissed. In *Lewis v. United States,* 663 F.2d 889 (9th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982), this court applied the *Feres* doctrine to bar the wrongful death claim of a marine pilot's widow who alleged her husband's death was intentionally caused. In *Bailey v. Van Buskirk,* 345 F.2d 298 (9th Cir.1965), *cert. denied,* 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966), we extended the *Feres* rationale to a serviceman's direct suit against other servicemen. *Accord Mattos v. United States,* 412 F.2d 793 (9th Cir.1969). Thus, Mollnow's common

**2.** Although an old case *Wilkes* may have some validity, having been distinguished by the Supreme Court in *Feres,* 340 U.S. at 141 n. 10, 71 S.Ct. at 157 n. 10, and *Chappell,* 462 U.S. at 305 n. 2, 103 S.Ct. at 2368 n. 2.

law tort claims, both negligent and intentional, are barred under *Feres.*

*Mollnow,* 716 F.2d at 628.

### III

In the order dismissing the first and second causes of action the district court held:

The plaintiff here seeks relief under 42 U.S.C. §§ 1985(3) and 1986. In *Chappell v. Wallace* the Court left it to the Court of Appeals to decide on remand whether the portion of plaintiff's suit seeking damages flowing from an alleged conspiracy among the defendants in violation of 42 U.S.C. § 1985(3) can be maintained. I am not advised of any further treatment of the issue by the Courts and do not perceive that such an action can be maintained in light of the emphatic holding in *Chappell.*

I am of the view that *Chappell v. Wallace, supra,* is dispositive of this action. For the reasons stated above, the defendant's motion is granted and the action is hereby dismissed.

■ We agree with the result but for a different reason. In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that a plaintiff must allege and prove four elements to make out a violation of § 1985(3): "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters and Joiners of America v. Scott,* 463 U.S. 825, ——, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983) (citing *Griffin,* 403 U.S. at 102–03, 91 S.Ct. at 1798).

In *Griffin* the court held that the conspiracy must be motivated by "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Griffin,* 403 U.S. at

102, 91 S.Ct. at 1798; *Carpenters,* 463 U.S. at ——, 103 S.Ct. at 3356. In construing this requirement neither the Supreme Court nor the Fourth Circuit has identified any classes other than racial or religious classes. *Cribb v. Pelham,* 552 F.Supp. 1217, 1224 (D.S.C.1982); *Croatan Books, Inc. v. Commonwealth of Virginia,* 574 F.Supp. 880, 888 (E.D.Va.1983); *see also Ward v. Connor,* 657 F.2d 45 (4th Cir. 1981).

In this action plaintiff contends that Paul Trerice was a member of a protected class of military prisoners. Plaintiff did not allege that Trerice was in a racial or religious classification. We refuse to recognize military prisoners as a class protected by § 1985(3). Thus, plaintiff's cause of action based on § 1985(3) must fail.

A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985. 42 U.S.C. § 1986. Having affirmed the dismissal of plaintiff's § 1985 claim, we also affirm the dismissal of his § 1986 claim.

For these reasons the order of the district court is

**AFFIRMED.**