**Veronica DECKINGER**

v.

**Wilfred CASTRO–REYES.**

**Civ. No. HM–87–465.**

United States District Court, D. Maryland.

Feb. 22, 1988.

Nelson R. Kandel and Richard Bolan, Baltimore, Md., for plaintiff.

Breckenridge L. Willcox, U.S. Atty., and Thomas F. O'Neil, III, Asst. U.S. Atty., Baltimore, Md., for defendant.

**MEMORANDUM**

HERBERT F. MURRAY, District Judge.

Plaintiff Veronica Deckinger ("Deckinger"), a Captain in the United States Army Reserve, filed this action against Major Wilfred Castro–Reyes ("Castro"), a military neurologist who treated her at Walter Reed Army Medical Center ("Center"). She alleges that Castro defamed her both orally and in written reports by stating that she was unfit for military service. Pending before the Court is defendant's Motion for Summary Judgment, Paper No. 15[1]. The Court has reviewed the memoranda submitted by the parties and has determined that no hearing is required. Local Rule 6.

1. This number is the docket entry number in    the official court file.

*Jurisdiction*

Plaintiff alleges jurisdiction based on diversity, claiming that she is a resident of Maryland and that defendant is a resident of Washington, D.C. Defendant points out that he is a resident of Maryland, but that jurisdiction is proper because, had plaintiff filed her complaint in state court, he would have petitioned to remove it pursuant to the federal officer's removal statute. 28 U.S.C. § 1442(a)(1). The Court relies on the facts that Castro made the allegedly defamatory statements on the premises of the Center while he was on duty and that Castro's superior officer directed him to write the report containing the allegedly defamatory statements to find, for the purposes of § 1442(a)(1), that defendant has sufficiently demonstrated that he was acting within the scope of his duty to make removal proper.[2] The Court will therefore assume jurisdiction rather than remand the case to state court for the exercise of requiring defendant to petition for removal.

*Factual Background*

Plaintiff was assigned to Active Duty Training Status ("ADT") for 108 days beginning May 21, 1986. Plaintiff's Exhibit F, at p. 4[3]. After her arrival in Fort Drum in Watertown, New York, she developed an upper respiratory infection, and experienced seizure episodes. Affidavit of Dr. Robert Z. Berry, attached as Plaintiff's Exhibit E. After a series of hospitalizations at Fort Drum, she was flown to the Center on August 8, 1986. While there, she was evaluated by several physicians, who came to the conclusion that there was no organic cause for her seizures, and that Deckinger was suffering from psychiatric problems, specifically a personality disorder and a conversion reaction.[4] Plaintiff's Exhibit F at p. 11; Affidavit of Castro, attached as Defendant's Exhibit A, at Par. 4[5]. The doctors recommended further psychotherapy, which plaintiff refused. Castro advised her that the medical staff intended to refer her to a medical evaluation board ("MEBD"). Defendant's Exhibit A, at Par. 5. Referral to MEBD is the first step in evaluating a soldier's fitness for service. Army Regulation ("AR") 635–40, attached at Plaintiff's Exhibit G, Chapters 1, 4. A soldier's commanding officer and a commanding officer of a medical facility may initiate this referral for a determination of fitness. AR 635–40, Chapter 4, Sections 4–5, 4–6, 4–7. In some circumstances, Army regulations require this referral. AR40–3, attached at Plaintiff's Exhibit G, Chapter 7, Section 7–5(b). If the MEBD determines that the soldier cannot meet the physical standards necessary to remain on duty, the MEBD refers her case to a physical evaluation board ("PEB"). AR635–40, Chapter 4, Section 4–13. The PEB makes the final determination of the fitness of the servicewoman. AR40–3, Chapter 7, Section 7–1.

On August 29, 1986, Deckinger was permitted to go home from the hospital on convalescent leave. On September 5, 1986, her orders for her 108 days on ADT automatically expired. On September 10, 1986, she telephoned the Center to arrange for her discharge. She was advised that, to get discharged, she must come to the Center. Upon her arrival, she was advised that she needed to request her discharge from the medical officer who handled her case, Castro. Castro felt strongly that she should not be discharged, and that she

---

**2.** The test for removal under § 1442(a)(1) is much easier to satisfy than the test to establish official immunity. *Willingham v. Morgan*, 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969). The Court's preliminary determination that removal would be proper under § 1442(a)(1) is not a ruling on defendant's immunity claim under *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

**3.** Plaintiff attached several exhibits to Plaintiff's Answer and Opposition to Defendant's Motion for Summary Judgment, Paper No. 17. Exhibit F is a series of official Army documents relating to plaintiff's military service. As she did not number the pages or documents, the Court has taken the liberty of doing so, and will refer to its own page numbers.

**4.** Plaintiff does not dispute that this diagnosis was made after consultation with and examination by other members of the Psychiatry Service at the Center.

**5.** Defendant's exhibits are attached to his Motion for Summary Judgment, Paper No. 15.

needed further treatment. Defendant and plaintiff had a discussion regarding his recommended treatment, during which Castro announced, in response to questions from plaintiff's mother, that plaintiff was unfit for military service.[6] Plaintiff's Affidavit, attached as Exhibit A; Defendant's Exhibit A at Par. 6. Castro ultimately discharged plaintiff to duty. Plaintiff's Exhibit F at p. 11.

Afterwards, as directed by his superior officer, Colonel Carl H. Gunderson ("Gunderson"), defendant wrote a narrative clinical summary. Defendant's Exhibit A at par. 7; Affidavit of Gunderson, attached as Defendant's Exhibit B at par. 4. In this summary, defendant repeated that plaintiff was suffering from a personality disorder and a conversion reaction, and that she was unfit for service. Plaintiff's Exhibit F at p. 6–8. An MEBD which included Castro, Gunderson, and Captain Jonathan P. Hosey recommended on November 26, 1986 that Deckinger be referred to a PEB. Plaintiff's Exhibit F at p. 12. At the time of the filing of these motions, Deckinger was still a soldier in the Army Reserves.[7]

*Standard for Summary Judgment*

The entry of summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On defendant's motion, the Court views all facts and draws all inferences in the light most favorable to plaintiff. *U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, Deckinger must demonstrate the existence of genuine issues of material fact to avoid the entry of summary judgment against her. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Meadow Limited Partnership v. Heritage Savings and Loan,* 639 F.Supp. 643, 651 n. 9 (E.D.Va.1986).

*Discussion*

Defendant makes two arguments in support of his motion for summary judgment. First, he argues that he is immune from suit because of the *Feres* doctrine, or intra-military immunity, developed by the Supreme Court in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) and *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). Defendant's second argument is that, as he was acting within the outer perimeter of the scope of his official duties as a federal officer, he is absolutely immune from state common-law tort liability. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Wallen v. Domm,* 700 F.2d 124, 125 (4th Cir.1983).

*Feres Doctrine and Intra–Military Immunity*

In the *Feres* case, the Supreme Court concluded that the sovereign's waiver of immunity in the Federal Tort Claims Act, Title 28 U.S.C. § 2671 *et seq.,* did not create liability of the United States to those in the military "where the injuries arise out of or in the course of military service." *Feres, supra,* 340 U.S. at 146, 71 S.Ct. at 159, a holding recently reaffirmed. *United States v. Johnson,* — U.S. ——, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648 (1987). The basis of the *Feres* doctrine is that civilian courts should not second-guess military decisions, *see Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 673, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), *cited in United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985), and that such suits might impair military discipline, *see Chappell, supra,* 462 U.S. at 300, 304, 103 S.Ct. at 2367, *cited in Shearer, supra,* 473 U.S. at 57, 105 S.Ct. at 3042. In *Chappell,* the Supreme Court formulated the concept of intra-military immunity, holding that military personnel may not maintain suit for consti-

---

**6.** Defendant states that he advised plaintiff and her parents that the staff had concluded that plaintiff was unfit for service. Defendant's Exhibit A at Par. 6.

**7.** According to Footnote 2 of Defendant's Reply Memorandum, Paper No. 18, plaintiff received notification on January 14, 1987 from the PEB that the MEBD had concluded that she was unfit for service, citing Deckinger Deposition Exhibit No. 4. The Court has no access to this document, and thus cannot verify this information.

tutional torts against their commanding officers. *Chappell, supra,* 462 U.S. at 305, 103 S.Ct. at 2368. The Circuit and District Courts have extended this intra–military immunity from suit to all military personnel sued by other servicemen or women, and have also extended the immunity to encompass common-law tort claims. *Trerice v. Summons,* 755 F.2d 1081, 1084–5 (4th Cir.1985); *Mollnow v. Carlton,* 716 F.2d 627, 628 (9th Cir.1983) *cert. denied* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984); *Bass v. Parsons,* 577 F.Supp. 944, 947 (S.D.W.Va.1984). In addition, the *Feres* bar prevents reservists from suing when their injuries arise from their military service. *Estate of Martinelli v. United States,* 812 F.2d 872, 873 (3rd Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 82, 98 L.Ed.2d 44 (1987); *Mattos v. United States,* 412 F.2d 793, 794 (9th Cir.1969); *United States v. Carroll,* 369 F.2d 618, 620 (8th Cir.1966); *Monarch Insurance Co. v. United States,* 511 F.Supp. 201, 203 (E.D. Va.1981).

Plaintiff does not dispute any of the above law. She instead argues that her alleged injury, Castro's defamation, did not arise out of nor was it incident to her military service. Whether an injury arises out of or is incident to service is a matter of fact. *Woodside v. United States,* 606 F.2d 134, 141 (6th Cir.1979) *cert. denied* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); *Hass v. United States,* 518 F.2d 1138, 1141. (4th Cir.1975) The Court finds that the undisputed facts reveal that the alleged defamation arises out of and is incident to plaintiff's military service.[8] The Court finds that one of the integral incidents of military service is the ever-present possibility of being evaluated for fitness for continuing service. The extensive regulations, to which plaintiff drew the attention of the Court by attaching them as an exhibit to her Opposition, reveal the importance of this process to the whole framework of military discipline. As all of the statements made by Castro were made in the context of either his treatment of her or of this evaluation, any injury that plaintiff might have received as a result of these statements necessarily arose out of the course of her duty. Castro is therefore entitled to immunity under the *Feres* and intra-military immunity doctrines. The Court notes that to permit military plaintiffs to recover for defamation when they are determined unfit for service, a determination that is inevitably published to others, would completely undermine the goals of these protective doctrines.

Plaintiff attempts to avoid this result by arguing, first, that when her ADT orders expired she was not in any military status, that she was not under any specific orders, that she was not receiving military pay, and that the Army had no power to evaluate her fitness for service. *Parker v. United States,* 611 F.2d 1007 (5th Cir.1980). She relies on the line of cases starting with *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949),[9] which held

---

**8.** To create a dispute of fact, as she must to avoid summary judgment, plaintiff points to a series of army regulations which she argues that Castro violated, and she also disputes vigorously that she has a personality disorder or a conversion reaction. The Court finds that these factual disputes are not material to the issue of whether her alleged injury was incident to or arose out of her military service. This determination does not depend on actions taken by the medical staff but upon plaintiff's status within the military at the time of the injury. Although plaintiff disputes the legal significance of the facts determinative of her status, claiming that she was not on any duty after her release from ADT, she does not dispute that, after her discharge from the Center she continued in the Reserves. Nor does she dispute that she went to the Center because of her illness during her ADT status; that during her stay at the Center her treating physicians, including Castro, determined that plaintiff suffered from psychiatric problems; and that these physicians, including Castro, determined that she should be referred to a MEBD.

**9.** *See e.g. United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954) (discharged serviceman permitted to bring suit against Veterans Administration hospital for negligent treatment); *Mills v. Tucker,* 499 F.2d 866, 867 (9th Cir.1974) (family of serviceman killed in a traffic accident while on furlough allowed to maintain suit); *Stephan v. United States,* 490 F.Supp. 323, 328 (W.D.Mich, S.D. 1980) (reservist injured during recreational activities at a lake on a military reservation permitted to maintain suit).

that injuries sustained by the serviceman in a car accident while on furlough arose out of his service only in that "all human events depend upon what has already transpired," *Brooks, supra,* 337 U.S. at 52, 69 S.Ct. at 920. This reliance is misplaced. None of these cases involved alleged injuries from a process inherent in maintaining an effective military force. *Howard v. Sikula,* 627 F.Supp. 497, 502 (S.D.Ohio 1986) (reservist's suit for defamation against those who reported a disciplinary infraction to a superior officer barred by *Feres*). Although Deckinger "was not on active duty when the alleged defamation occurred, [s]he was undisputedly subject to military duty at the time of the injury and was involved in an activity at that time that was provided directly by the military." *Howard, supra,* 627 F.Supp. at 502; *see also Anderson v. United States,* 724 F.2d 608, 610 (8th Cir.1983) (although plaintiff had been discharged, he was still subject to reserve duty, hence his suit for unlawful arrest and detention when he was arrested for being AWOL was barred by *Feres*).

Plaintiff also argues, not only that the Army had no jurisdiction to evaluate her, but that the wrong person in the Army initiated the evaluation. Further, by stating that she was unfit, Castro in his role as evaluating physician and in his role as MEBD member violated AR635–40, Chapter 4, Section 4–9(c) and AR40–3, Chapter 7, Section 7–1. For the Court to determine liability based upon the level of the Army's or Castro's compliance with Army regulations would require exactly the type of second-guessing of military decision-making precluded by the *Feres* and intra-military doctrines.

Because the Court finds that plaintiff's claim of defamation arises out of and is incident to her service, defendant is entitled to intra-military immunity. Accordingly, the Court will enter summary judgment in his favor.

Because the Court determines that Castro is immune from suit because of the *Feres* doctrine, it need not address his claim for immunity from state law tort claims as enunciated in *Barr, supra,* 360 U.S. 564, 79 S.Ct. 1335.

The Court will incorporate its rulings in a separate Order.