**Dennis M. KENNEALLY, Plaintiff,**

**v.**

**Michael J. BAYER, Defendant.**

**Civ. A. No. R–90–1707.**

United States District Court,
D. Maryland.

Nov. 9, 1990.

Phyllis Dobin, Ebert, Dobin and Green, Washington, D.C., for plaintiff.

Lee Levine, Eleni M. Constantine, Ross, Dixon and Masback, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Pending before the Court in the above-captioned case is defendant, Bayer's, motion to dismiss, or in the alternative, for summary judgment. Pursuant to Local Rule 105, subd. 6 (D.Md), the Court will decide defendant's motion without a hearing.

As a preliminary matter, the Court must decide whether to treat defendant's motion as a motion to dismiss or a motion for summary judgment. Pursuant to Fed.R. Civ.P. 12(b), if as part of a motion to dismiss, a party presents matters outside the pleading that are not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56. Defendant did in fact attach an affidavit to its motion.

Defendant maintains that the Court has the option either to rely on matters outside the pleadings and treat the motion as one for summary judgment, or to treat the motion as one to dismiss, excluding such matters from consideration and accepting allegations of the pleading as admitted. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581–82 (9th Cir. 1983). Plaintiff maintains that because defendant attached an affidavit and further relied upon the affidavit in its motion, the Court must treat defendant's motion as one for summary judgment.

Without ruling on whether the Court may or must treat defendant's motion as one for summary judgment, the Court will rely on matters submitted outside the pleadings, and accordingly will treat defendant's motion as one for summary judgment.

### Standards for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure serves the important purpose of "conserv[ing] judicial time and energy by avoiding unnecessary trial and by providing a speedy and efficient summary disposition" of litigation in which the plaintiff fails to make some minimal showing that the defendant may be liable on the claims alleged. *Bland v. Norfolk & Southern R.R. Co.*, 406 F.2d 863, 866 (4th Cir.1969). The applicable standards for analyzing a motion for summary judgment under Rule 56 are well-established. The defendant seeking summary judgment bears the burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. In determining whether the defendant has sustained this burden, this Court must consider whether, when assessing the evidence in the light most favorable to the plaintiff, a "fair-minded jury could return a verdict for the plaintiff...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Pulliam Investment Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987). That is, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. *Id., see also Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir. 1984). It is against these standards that the Court shall review defendants' motion.

### Background

On April 21, 1989, defendant allegedly placed a telephone call to the Office of Presidential Personnel ("OPP"), and in the allegedly mistaken belief that plaintiff was under consideration for appointment to a governmental position, made an allegedly defamatory statement to the effect that plaintiff used illegal drugs and had committed a crime punishable under the Uniform Code of Military Justice. It is uncontested that at the time the statement was made, defendant was a Lieutenant Colonel in the D.C. National Guard ("Guard") and plaintiff was a Colonel in the Guard, and also served as Commander of Troop Command. Although defendant was subordinate to

plaintiff, he was not in plaintiff's line of command. At the time that the statement was made, both plaintiff and defendant were allegedly neither on active duty nor on inactive-training duty.

Defendant maintains alternatively: 1) that this action is barred under the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), because the injury alleged in the complaint occurred in the course of activity incident to plaintiff's military service; or 2) that defendant is entitled to official immunity under *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); or 3) that defendant's statements are absolutely privileged at common law. The Court will discuss each of defendant's alternate grounds in turn.

### Feres Doctrine

In *Feres,* the Supreme Court held that members of the military were barred from bringing tort suits against the United States for injuries that "arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. In decisions following *Feres* the Court has indicated that *Feres* is based on three broad rationales. First, the relationship between the government and the members of its armed forces is distinctively federal in character. *E.g., United States v. Johnson,* 481 U.S. 681, 689, 107 S.Ct. 2063, 2068, 95 L.Ed.2d 648 (1986). Second, the existence of generous statutory disability benefits provides an upper limit of liability for service related injuries. *Id.* Third, suits by service members injuries incurred incident to military service "would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Id.* (citations omitted).

The third rationale on which *Feres* was based has led to the extension of *Feres* to provide immunity for military actors, as opposed to the Government, in limited circumstances. The Supreme Court has stated that intra-military immunity applies to bar claims brought directly under the constitution pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against both military personnel supervising the claimants, *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) as well as to others exercising military responsibility. *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). In *Trerice v. Summons,* 755 F.2d 1081 (4th Cir.1985), the Fourth Circuit Court of Appeals stated that the intra-military immunity doctrine may bar common law tort suits between service members. *Id.* at 1084.

The Court believes that whether defendant is able to use intra-military immunity as a bar to plaintiff's suit depends on two factual determinations that the Court is unable to make summarily.

First, in order for defendant to be able to claim intra-military immunity, he must establish that he was performing a military act by making the alleged call to OPP. *Durant v. Neneman,* 884 F.2d 1350, 1354 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 728, 107 L.Ed.2d 747 (1990); *Brown v. United States,* 739 F.2d 362 (8th Cir.1984), *cert. denied,* 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985). With respect to this issue, it is clear to the Court that the following genuine issues of material fact exist. First, plaintiff maintains that the OPP is not the representative of the Commander-in-Chief for military purposes, a fact that defendant disputes. Second, plaintiff claims that because defendant was neither on active duty nor on inactive-training duty, defendant can not be considered military personnel at the time of the act. Defendant, however, maintains that he was acting in his capacity as a senior officer in the Guard, and was merely responding to the request of the Commander-in-Chief of the Guard. Finally, the Court notes that defendant is not being represented by the Justice Department of the United States and that the Justice Department has in fact claimed that matters arising in the context of the Guard involve no federal interest. The Justice Department's position clearly indicates that there is a factual issue as to whether defendant was federal military personnel.

In addition to establishing that he was performing a military act, defendant must establish that the alleged injury arose out of, or was in the course of, activity incident to plaintiff's military service. *United States v. Stanley,* 483 U.S. 669, 680–84, 107 S.Ct. 3054, 3061–64, 97 L.Ed.2d 550 (1986). "Whether an injury arises out of or is incident to service is a matter of fact." *Deckinger,* 689 F.Supp. at 534. Defendant claims that *Deckinger v. Castro–Reyes,* 689 F.Supp. 531, 534 (D.Md.1988), is dispositive of this issue. In *Deckinger,* the plaintiff claimed she had been defamed by an Army medical officer who had deemed her unfit. The Court stated that "one of the integral incidents of military service is the ever present possibility of being evaluated for fitness for continuing service.... [A]ny injury that plaintiff might have received as a result of these statements necessarily arose out of the course of her duty." *Id.* The Court agrees that one of the incidents of military service is the possibility of being evaluated. Nevertheless, a factual determination must be made regarding the status of plaintiff and the OPP at the time of the alleged defamatory statement before the Court will be able to determine whether the alleged evaluation directed to the OPP was an incident of plaintiff's service.

### Official Immunity

The official immunity doctrine confers immunity on officials of the United States ("Government") based on the belief that "officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties-suits which would consume time and energy which would otherwise be devoted to gov-ernmental service and the threat of which might appreciably inhibit the fearless, vigorous and effective administration of policies of government." *Barr v. Matteo,* 360 U.S. 564, 571, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 1434 (1959). The official immunity doctrine seeks to reconcile the protection of the individual against damage caused by oppressive or malicious action by Government officials with the protection of the public interest by shielding Government officials against the harassment of baseless damage suits brought "on account of action taken in the exercise of their official responsibilities." *Id.* at 565, 79 S.Ct. at 1336; *Doe v. McMillan,* 412 U.S. 306, 319, 93 S.Ct. 2018, 2028, 36 L.Ed.2d 912 (1973).

Absolute immunity from state-law tort actions exists only "when the conduct of federal officials is within the scope of their official duties *and* the conduct is discretionary in nature." *Westfall v. Erwin,* 484 U.S. 292, 297–98, 108 S.Ct. 580, 584–85, 98 L.Ed.2d 619 (1988) (emphasis in original).[1] In *Westfall,* the Court advised lower courts "to consider the contribution [of immunity] to effective government in particular contexts outweighs the potential harm to individual citizens. Courts must not lose sight of the purposes of the official immunity doctrine when resolving individual claims of immunity." *Id.* at 299–300, 108 S.Ct. at 585.

Defendant claims that he is entitled to official immunity because he acted as a Government official and the alleged conduct was both within his duty and discretionary in nature. Defendant further argues that even should the Court find that he was not a federal officer at the time the statements were made, the Court should extend official immunity to defendant's allegedly defamatory statements in the pub-

---

**1.** *Westfall v. Erwin* was superseded in large part by the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.Law No. 100–694, §§ 5, 6, 102 Stat. 4564 (Codified as amended at 28 U.S.C. § 2679 (Supp.1989). The Act provides in pertinent part:

> (d)(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such a claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted for the party defendant. Section 6

As the Attorney General has not certified that defendant was acting within the scope of his office, the Court will proceed with the analysis under *Westfall.*

lic's interest. Plaintiff maintains that defendant was not a Government official at the time the defamatory statements were made; that defendant's statements were not discretionary when made; that defendant's statements were not within his duties; and that the Court should not extend official immunity to defendant's alleged statements in the public's interest.

■ Without deciding whether defendant acted as a Government official or whether the actions of defendant were discretionary in nature, for the reasons set forth below, the Court concludes that the actions of the defendant were clearly beyond the outer perimeter of the duties of his office. Accordingly, defendant is not entitled to official immunity under *Barr v. Matteo*.

An act falls within the outer perimeter of an official's duty if it "bear[s] some reasonable relation to and connection with the duties and responsibilities of the official, ... and is not manifestly or palpably beyond the official's authority." *See Nietert v. Overby*, 816 F.2d 1464, 1466 (10th Cir. 1987) (citations omitted). A determination of whether actions are within the official's duties is a question of law. *Id.*

Plaintiff claims that defendant's actions were not within the outer perimeter of his duties. In support thereof, plaintiff offers the chain of command of the Guard for lodging complaints against fellow officers. The OPP fails to appear at any point along the chain of command with respect to complaints against fellow officers. Defendant fails to cite any basis for reporting his complaints to the OPP, and in defense only claims that he was impliedly ordered to make the allegedly defamatory statement by a representative of the Commander-in-Chief.

In reliance upon many cases, defendant claims that "Federal courts have repeatedly held that it is within the outer perimeters of a military officer's duty ... to report to superior officers information regarding deficiencies in the performance of a fellow officer's military duties." In all of the cases relied upon by the defendant, however, the parties making the allegedly defamatory remark were found to have been acting pursuant to actual procedures within the chain of command or as commanded by ranking officers who were acting within the scope of their duties.

Defendant makes no assertion that he acted in accordance with the chain of command for lodging formal complaints. Defendant's reliance on the following cases, therefore, is misplaced. In *Cross v. Fiscus*, 830 F.2d 755 (7th Cir.1987), the Seventh Circuit held that three gunnery sergeants of the Marine Reserve were protected by official immunity from defamation claims made by a superior officer based on complaints the sargeants had made about plaintiff to his superior officers. The Seventh Circuit noted that the making of the evaluations was within the sargeants' duties because it was within the chain of command and pursuant to military regulations. *Id.* at 758. In *Nietert v. Overby*, 816 F.2d 1464 (10th Cir.1987), the Tenth Circuit held that a sales clerk employed by the Army and Air Force Exchange Service (AAFES) who had called the AAFES anonymously to report alleged misconduct of her supervisor was acting pursuant to a duty because her statements were made through official channels and in the context of a program that encouraged reporting misconduct. *Id.* at 1466–67. In *Areskog v. United States*, 396 F.Supp. 834 (D.Conn. 1975), the court held that a Navy Captain who had allegedly interfered with another captain's contractual relations was acting pursuant to a duty established by Navy regulations and directives. *Id.* at 840.

Defendant asserts that any comments that he made with respect to the plaintiff were in response to a question by the OPP to the effect of "what do you think about" the plaintiff. Defendant implies that in answering the question, he was in effect responding to an order.[2] The Court finds

---

**2.** Plaintiff disputes defendant's claims. Plaintiff alleges that the defendant affirmatively called OPP to make the allegedly defamatory statements and was not prompted by OPP. Additionally, plaintiff claims that the OPP is not within the chain of command of any military

that defendant's implied claim that he was responding to an order is beyond any plausible reading of the facts. Defendant's reliance on the following cases where persons were granted immunity when acting pursuant to an order that was deemed to have created a duty, therefore, is misplaced. In *McManus v. McCarthy*, 586 F.Supp. 302 (S.D.N.Y.1984), the court held that merchant marine cadets were immune from defamation claims by a merchant marine captain insofar as they were acting pursuant to specific orders from another captain. *Id.* at 304–05.[3] In *Berndtson v. Lewis*, 465 F.2d 706, 708 (4th Cir.1972), the Fourth Circuit held that it was compelled to infer that a junior Navy officer was specifically ordered to give a press interview where allegedly defamatory statements were made. *Id.* at 708.

Defendant claims that whether he was acting within the chain of command should not be considered relevant when determining whether official immunity exists. The Court disagrees. This is neither a case where no means were available to make a formal complaint against a superior officer nor is it a case where a party has lodged a complaint within the chain of command only to be rebuked. In circumstances where no procedures exist to effectuate a complaint against a superior officer, or if the complaint procedure was found to be ineffective, the Court may be more willing to find that lodging of complaints with any Government entity which is perceived to have authority is within the outer perimeter of a Government official's duties. By choosing to lodge a complaint with a federal entity that has no identifiable connection to the established military procedure for lodging formal complaints against District of Columbia National Guardsman, defendant clearly exceeded any possible

scope of his duties. Accordingly, defendant is not entitled to official immunity under *Barr v. Matteo*.[4]

### Absolute Privilege

■ The defendant claims that the statements that he was alleged to have made to the OPP in the District of Columbia are absolutely privileged at common law. Both parties have tacitly agreed that District of Columbia law applies. Under the law of the District of Columbia, statements are absolutely privileged when made in connection with judicial and quasi-judicial proceedings. *Mazanderan v. McGranery*, 490 A.2d 180 (D.C.App.1984); *Sturdivant v. Seaboard Serv. Sys. Ltd.*, 459 A.2d 1058 (D.C.App.1983).

Defendant claims that *Smith v. McDonald*, 895 F.2d 147 (4th Cir.1990), is dispositive in this case. In *Smith*, the Court held that defamatory statements in letters written to the President regarding a United States Attorney nominee were absolutely privileged because the President was performing a quasi-judicial function as that term was interpreted under North Carolina law. *Id.* at 151. As plaintiff correctly points out, North Carolina law clearly is not dispositive of the issue of what has been interpreted to be "quasi-judicial" under District of Columbia law.

Plaintiff maintains that *White v. Fraternal Order of Police*, 909 F.2d 512 (D.C.Cir. 1990) is dispositive in this case. The Court agrees. In *White*, the Fraternal Order of the Police ("FOP") sent letters containing material capable of defamatory meaning to the United States Attorney and the Mayor of the District. The letters alleged irregularities in the Metropolitan Police Department drug testing procedures that led to an investigation by the District government. *Id.* at 515.

---

personnel. Because in deciding a motion for summary judgment all facts must be viewed in a light most favorable to the plaintiff, at the very least it is clear that genuine issues of material fact exist with respect to this issue.

3. The captain who had given the orders to the cadets was deemed immune because his actions were found to be clearly in accord with his responsibilities. *McManus*, 586 F.Supp. at 304.

4. Additionally, defendant makes no showing that the public interest would not have been adequately protected if he had acted pursuant to the authorized means for lodging a complaint. The Court, therefore, sees no reason to extend immunity under *Barr v. Matteo* to unauthorized actions of the defendant.

The FOP contended that the statements were entitled to absolute privilege because they led to an investigation that FOP claimed was a quasi-judicial proceeding. *Id.* at 523. FOP claimed that *Mazanderan v. McGranery*, 490 A.2d 180 (D.C.App. 1984), in which the court found absolute privilege in quasi-judicial proceedings was applicable. *Id.* at 523–24.

The *White* court noted that *Mazanderan* provided little direction in spelling out the limits of the quasi-judicial rubric. The court, however, noted that in the cases cited by *Mazanderan* where absolute privilege was found to exist, "the decision-making body had all of the trappings of an adjudicatory tribunal." *Id.* at 524. Ultimately, the court held that the District investigation was not sufficiently judicial in nature to warrant application of the absolute privilege. The court recognized that the investigation did not include "traditional adjudicatory processes such as the holding of formal hearings and did not possess the power to issue a ruling that could be enforced or appealed." *Id.*

Defendant has failed to allege any facts on which the Court could find that the OPP had any trappings of a traditional adjudicatory tribunal. Defendant merely alleges that because "the President was required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for ... official action, and to exercise discretion of a judicial nature," the presidential appointment process constitutes a quasi-judicial function. *Smith v. McDonald*, 895 F.2d at 161 (citations omitted). Such factors may have been appropriate to constitute a quasi-judicial function in North Carolina, however, the District of Columbia requires more. Accordingly, under the law of the District of Columbia, it is clear that summary judgment is not proper based on the record presently before the Court.

Accordingly, it is this 9th day of November, 1990, by the United States District Court for the District of Maryland,

ORDERED:

That defendant's motion to dismiss, or in the alternative, for summary judgment is DENIED.