## J. W. ALEXANDER v. J. N. VANN.

### (Filed 13 October, 1920.)

**1. Libel and Slander—Privilege Communications.**

An absolute privileged communication rests in public policy, and is one which, under ordinary circumstances, would be defamatory, made to another in pursuit of a duty, political, judicial, social, or personal, and an action for libel or slander will not lie, though the statement was false, unless actuated by actual malice.

**2. Libel and Slander—Qualified Communications.**

A qualified privilege extends to all communications made *bona fide* upon any subject-matter in which the party communicating, acting without malice, has an interest, or in reference to which he has a moral or a legal duty to perform; and the inference of malice may be rebutted by the occasion of the communication, or such occasion may tend to prove it, or tend to prove that the defendant was actuated by motives of personal spite or ill-will, independent of the occasion on which the communication was made.

**3. Libel and Slander—Privilege—Actionable Per Se.**

The sheriff of a county in returning a prisoner charged with wife murder, to another county, put the prisoner in charge of his deputy sheriff, and deputized a negro ex-convict, who had, single-handed, made the arrest, to assist his deputy. The subdeputy rode in the car for colored people, but at the request of a third person, with the acquiescence of the deputy, went into the white people's car and rode with them for a while, to give some personal information as to the arrest: *Held,* a letter written to the deputy by a defeated candidate for sheriff, of the county to which the prisoner was being carried, in effect, that the writer was surprised and disgusted that the deputy permitted the negro subdeputy to ride on equality in the coach with himself, and that the negro subdeputy, a wife murderer, except in incident of birth, was a better man, lacks the elements of a privileged communication, in that it was addressed personally to an official of an adjoining county, and not to any one who could have remedied the wrong, if any had been committed; and considered with the further facts of the case, showed personal spite and malice, and was actionable *per se.*

CIVIL ACTION for damages for libel, tried before *Devin, J.,* at April Term, 1920, of HERTFORD.

The action was submitted to the jury upon the following issues:

"1. Did the defendant publish of and concerning the plaintiff the letter set out in paragraph three of the complaint? Answer: 'Yes.'

"2. Were the matters and things published of and concerning plaintiff in said letter true? Answer: 'No.'

"3. What damage, if any, is plaintiff entitled to recover therefor? Answer: '$500.' "

From the judgment rendered the defendant appealed.

*Rogers & Williams, Stanley Winborne, and W. H. S. Burgwyn for plaintiff.*

*D. C. Barnes, W. R. Johnson, Winston & Matthews, and W. D. Boone for defendant.*

BROWN, J.   We are of opinion that Judge Devin was correct in holding that the words of the letter are libelous of themselves, and actionable because the doctrine of qualified privilege does not apply. The undisputed facts are that the plaintiff was a deputy sheriff of Hertford County under Sheriff Garrett at the time the said libelous letter was written and mailed to the sheriff of Pitt County.   On 5 May, 1917, Sheriff Garrett received a telegram from sheriff McLawhorn of Pitt County requesting him to arrest one Zemas, a Hungarian of desperate character, a fugitive from justice, who had murdered his wife, for whose capture a reward of $200 had been offered.   Eley Reid, a colored man, captured Zemas in the swamps of Chowan River, and, single-handed, delivered him to the sheriff of Hertford County at Winton.   Sheriff Garrett had been requested to have the prisoner well guarded by two men at the expense of Pitt County.   He deputized the plaintiff, a regular deputy, to take the prisoner to Pitt County, and appointed said Reid, a very powerful man, to act as guard.   The plaintiff took the prisoner and placed him with himself and Reid in the smoker of a white coach, and delivered him safely to Sheriff McLawhorn at Greenville, Pitt County, N. C.   The plaintiff, with Reid, then returned to Hertford County.   The evidence shows that the plaintiff rode in the white coach, and Reid was in the colored coach except for a short distance, when he first got on the train he was called into the smoker of the white coach by one Mr. Ames, a railroad detective who knew him, and having heard of the capture of Zemas, the Hungarian wife-murderer, asked of Reid the details of the capture.   When Reid had related the story to Mr. Ames, he returned to the colored coach and remained there until he reached Ahoskie, his destination.

In the fall, just prior to the publication of the letter in question, J. N. Vann, the defendant in this action, was for the third time defeated by A. E. Garrett in the election for sheriff of Hertford County, and at the time of the publication of the said libelous letter, J. N. Vann was a private citizen of Hertford County, and was unfriendly toward Sheriff Garrett.

Eley Reid was at the time the said letter was written an exconvict, and he is a negro.

The alleged libel is contained in the following letter received by Sheriff McLawhorn from the defendant:

AHOSKIE, N. C., March 9, 1917.

SHERIFF McLAWHORN, Greenville, N. C.

DEAR SIR:—I read with surprise, and disgust to a certain degree, that account of the capture of the criminal from your section by Eley Reid of this county.

Judging from the report that Deputy Alexander brought back here, you gentlemen evidently did not recognize Reid as being a negro, nor did Alexander have self-respect to inform you of this fact, judging from the entertainment he reports you gentlemen have accorded Reid. A friend of mine says that Alexander actually had Reid in the white coach on the seats with gentlemen on his return trip here.

Reid is a negro, and an exconvict, and Alexander is a very little better, and I should say, except by birthright, Reid is a superior man.

Regretful to say the high office of sheriff of Hertford County has reached a very undignified state to which the better element of people here do not approve.

I am not giving you this information in confidence by any means, but I do think it the duty of all respectful whites who are proud of their Caucasian blood from which they sprang, to state these facts.

I am yours very truly,

J. E. VANN.

As we understand it, a privileged communication is one which, under ordinary circumstances, would be defamatory made to another in pursuance of a duty, political, judicial, social, or personal, so that an action for libel or slander will not lie though the statement be false unless actual malice be proved in addition. The great underlying principle of the doctrine of privileged communications rests in public policy. Qualified privilege extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has some moral or legal duty to perform. The occasion on which the communication was made may rebut the inference of malice or it may tend to prove malice, and that the defendant was actuated by motives of personal spite or ill-will independent of the occasion on which the communication was made. Mr. Newell says, sec. 497, that a communication to be privileged must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or proper cause. The learned author further says, sec. 501, that if the communication, whether written or oral, be of such a character that the expressions in it are beyond what common sense indicates to be justifiable, it cannot be held as privileged. In regard to communications containing charges against public officers, Mr. Newell says: "It is the

duty of all who witness any misconduct on the part of a magistrate or any public officer to bring such misconduct to the notice of those whose duty it is to inquire into and punish it; and, therefore, all petitions and memorials complaining of such misconduct, if prepared in good faith and forwarded to the proper authorities, are privileged."

This Court has recognized and acted upon these just principles of the common law. This Court held unanimously, in *Logan v. Hodges,* 146 N. C., 38, that: "A postal card containing a libelous communication concerning a public official of a county, though written in the public interest, is not absolutely or qualifiedly privileged when not addressed to some person having jurisdiction to entertain the complaint, or power to redress the grievance, or some duty to perform, or interest in connection with it." In *Fields v. Bynum,* 156 N. C., 413, this Court said: "To justify words alleged to have been slanderously spoken, and to bring himself within the protection which attaches to communications made in the fulfillment of a duty, the defendant must show something more than an honest belief in the truth of his utterances, for he must show that the communication was made in good faith on an occasion which justified his making it; and the manner in which it is uttered may take them out of the privilege." We also said in the same case that where the expressions are allowable, the manner in which they are made public may take them out of the privilege. *Dawkins v. Lord Paulet,* L. R., 5 Q. B., p. 102; Newell on Slander, p. 477.

We fully concur in what is said by *Mr. Justice Hoke* in *S. v. Publishing Co.,* 179 N. C., 720, as follows: "It is to the public interest that the conduct and qualifications of officials and candidates for public office be subjected to free and fair criticisms and discussion by their constituents, and such presents a case of qualified privilege, and to convict of libel for defamatory publication of this character by a newspaper and its editor, it must be shown that it is both false and malicious, its falsity not of itself sufficient to establish malice, there being a presumption that the publication was made in good faith."

Under all these authorities we think the defendant has failed to bring himself within the doctrine of qualified privilege. There is nothing in the letter which even charges the plaintiff with any dereliction in his official duty. The face of the letter shows to our minds conclusively that no good purpose could be accomplished, or was intended to be accomplished, by its publication. The plaintiff was the deputy sheriff engaged in carrying out the instructions of the sheriff of Hertford County. The sheriff appointed Reid to assist in guarding the prisoner. We see nothing improper whatever in appointing the negro, who had single-handed captured the murderer, to guard him to the place of destination. The person to whom the letter was addressed had no

jurisdiction whatever to entertain the complaint, or to redress the grievance if there had been any. McLawhorn, to whom the letter was addressed, was the sheriff of Pitt County. If Alexander had been guilty of anything that public policy required should be known and corrected, it was the defendant's duty to address his communication to the sheriff of Hertford County, who appointed Alexander. There is nothing to justify the defendant in charging the plaintiff with being very little better than a negro or a convict. There is nothing to justify the assertion that the exconvict Reid is a superior man to the plaintiff. The entire communication shows on its face that it was not written for the *bona fide* purpose of redressing or calling attention of the public to any misconduct in office of a public official. On the contrary, it appears to us very strongly that the letter was written solely in spite and malice for the purpose of injuring the plaintiff, who was a deputy of Sheriff Garrett of Hertford County, who had defeated the defendant in a recent election. The communication was not addressed to any person who had power to redress any grievance, but was addressed to the sheriff of another county. In *Logan v. Hodges, supra,* the defendant addressed a postal card to A. J. Martin, and sent it through the mails, reading as follows: "Dear Sir:—From conversation I have had with a gentleman from Davie County who was in Yadkinville the day after the robbery, I believe the guilty men live in Yadkinville. Turn your searchlights on your treasurer and the man that boards with him and the postmaster, and you will find where the money went. Yours truly, J. D. Hodges, Augusta, N. C., 9 September, 1904." This Court held the communication was libelous *per se,* and was not a case of qualified privilege, because not addressed to some person having jurisdiction to entertain the complaint or power to redress the grievance or some duty to perform or interest in connection with it.

If the *Logan case* was not one of qualified privilege, it is impossible for us to see how the present case can be. There is nothing in *S. v. Publishing Co.* which at all militates against our opinion in this case. That case was one against a newspaper on account of the editorial comment upon the conduct of sheriff McLawhorn, the sheriff of Pitt County, and a candidate for renomination, charging that he had been unfaithful and criminally negligent in respect to enforcing the statutory provision applicable to deserters and slackers under the Federal Draft Acts. It is manifest that the publication was in the public interests; that it was made against a public officer, a candidate for reëlection, and *prima facie* made in good faith in order to defeat the reëlection of the unworthy public officer.

In this case the motives of the defendant in writing the letter were evidently personal. His feelings were hostile, and, however strong may

have been his convictions, there is nothing on the face of the letter, or in evidence, which can justify putting plaintiff on par with an exconvict.

We ·think the verdict of the jury, under proper instructions by the judge below, must be sustained.

Affirmed.