**David I. SMITH, Plaintiff,**

v.

**Robert McDONALD, Defendants.**

**Civ. No. C–81–475–G.**

United States District Court,
M.D. North Carolina,
Greensboro Division.

Aug. 25, 1988.

William A. Eagles and B.F. Wood, Graham, N.C., for plaintiff.

William Woodward Webb, Raleigh, N.C., for defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

At the trial of this libel case in May 1988 the jury awarded the Plaintiff $50,000.00 in compensatory damages and $150,000.00 in punitive damages. The Defendant has moved for judgment notwithstanding the verdict, for a new trial, and for remittitur of the damages to a nominal sum. The court finds that there was sufficient evidence to support the verdict and that the amount of damages is not excessive. Ac-

cordingly, all motions will be denied and judgment will be entered on the jury's verdict.

## Background

This case arises out of two letters which Robert McDonald wrote to President Reagan and other officials opposing David Smith's proposed nomination to the position of United States Attorney for the Middle District of North Carolina. These letters, dated December 1, 1980, and February 13, 1981, respectively, charged Smith with numerous instances of misconduct and urged his rejection in no uncertain terms. Smith did not receive the nomination, and he filed this action for libel in state court in July 1981. McDonald removed the suit to this court on the basis of diversity.

Because McDonald's statements occurred in communications to the President concerning a public figure, his motion for judgment on the pleadings raised novel issues regarding the nature and extent of the privilege provided by the Petition Clause of the first amendment. Rejecting Defendant's contention that the communications were absolutely privileged, this court held that the Petition Clause confers a qualified privilege equivalent to those under the Speech and Press Clauses as interpreted in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. 2d 686 (1964); this decision was affirmed by the Fourth Circuit Court of Appeals and by the United States Supreme Court. *Smith v. McDonald*, 562 F.Supp. 829 (M.D. N.C.1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd sub nom. *McDonald v. Smith*, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). Thus, the major issues at the trial concerned the truth or falsity of McDonald's statements and whether they were made "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *New York Times*, 376 U.S. at 280, 84 S.Ct. at 726.

Before submitting these issues to the jury, however, the court was required to distinguish the letters' actionable statements of fact from their constitutionally-

protected statements of opinion. *See Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1285 n. 12 (4th Cir.1987) (opinion designation a question of law). Although much in the letters was undeniably opinion, these opinions were interspersed with admittedly factual statements. Rather than having the jury pass on the letters as a whole, the court applied the *Potomac Valve* criteria and directed the jury's attention to specific statements of fact.[1] To obtain the most precise statement of the jury's findings and to preserve the clearest record for appellate purposes, each factual assertion was quoted in a separate issue. The jury was instructed to consider individually each assertion's truth or falsity and, if the jury found a statement untrue, to decide whether it was made with *New York Times* malice.

Ten such issues, supplemented by two issues concerning compensatory and punitive damages, were submitted to the jury.[2] The jury found that eight of the statements were false and were made with knowledge of or reckless disregard for their falsity. One statement was found to be true, and one statement was found to be false but made without malice. On the basis of the eight false and malicious statements, the jury awarded Smith $50,000.00 in compensatory damages and $150,000.00 in punitive damages.

McDonald now attacks the verdict as against the weight of the evidence, influenced by passion and prejudice, and excessive in the damages awarded. As to the eight statements found to be libelous, he argues that the evidence showed that four of these statements were true or substantially true, and that three additional statements were made without malice. He contends that the one remaining statement was a non-actionable expression of opinion. Finally, he asserts that the compensatory damage award is unsupported by the evidence and that the punitive damage award

is grossly excessive. In support of the latter contention McDonald submitted a brief affidavit outlining his current financial status.

## DISCUSSION

### I. *The Motion for Judgment N.O.V.*

Recognizing that a single actionable statement would support a verdict against him, McDonald challenges the jury's findings on each of the eight libelous issues/statements. Although there is merit to a number of his arguments, the court need not address all of them in detail because there was sufficient evidence to support the verdict on at least three of the statements, submitted as issues numbered 1, 2, and 10. Since these three libels are also among the most damaging assertions in the letters, the motion for a j.n.o.v. must be denied.

■ Issues numbered 1 and 10 involve McDonald's allegation that at a hearing in a case involving McDonald's business, in which David Smith had at one time represented the opposing party, United States Magistrate Herman A. Smith termed David Smith's conduct "the most reprehensible conduct of any attorney to come before me in my twenty-five years on the bench." This alleged quote was repeated in each of the letters, hence the separate issues.

The Plaintiff's major evidence regarding these issues was the testimony of Magistrate Smith himself, who flatly denied making the statement. Magistrate Smith further testified that he saw no unethical behavior and had no occasion to reprimand David Smith regarding that particular case. The Plaintiff also presented the testimony of John Patterson, David Smith's co-counsel in the case, who testified that he observed no unethical behavior from attorney Smith and received no complaints regarding his conduct.

---

1. Several of these statements, and one in particular, involved a delicate determination regarding the first amendment line between fact and opinion. Because some statements were clearly factual and were going before the jury, in close cases the court leaned toward the factual side of the line, subject to later correction—without the expense of a retrial—by this or an appellate court.

2. The issue sheet is attached to this opinion as Appendix A.

Unable to produce a transcript or a recording of the hearing, McDonald testified that he was present and that Magistrate Smith's words were "the attorneys for the plaintiff were guilty of the most reprehensible conduct I've seen in twenty-five years." Although David Smith was just one of the plaintiff's attorneys and had withdrawn from the case approximately two years before this particular hearing, McDonald testified that he felt David Smith was the most guilty party among the plaintiff's attorneys. McDonald also submitted copies of a recommendation entered by Magistrate Smith in January 1977 and of a dismissal order entered by the district judge in July 1977 which detailed discovery abuses, highlighted orders which were not obeyed, and imposed a $1,000.00 sanction on the plaintiff in that case.

McDonald also presented the testimony of Michael Lewis, his lawyer at the hearing. McDonald had given Lewis's name, address, and telephone number as a reference in his first letter. Lewis recalled that Magistrate Smith had found that interrogatories were not answered, that orders were not obeyed, and that deposition testimony was inaccurate. He also recalled that Magistrate Smith had said that the case was an embarrassment to the judicial system. Most importantly, however, Lewis could not recall Magistrate Smith making the quote at issue.

McDonald's own evidence thus falls short of proving the truth of his allegations and leaves questions as to McDonald's state of mind in communicating an erroneous version of the hearing. When Magistrate Smith's testimony is considered, a reasonable juror could have found, as these jurors did, clear and convincing evidence that McDonald maliciously made a false statement.

Accepting that discovery orders were not complied with, leading to the eventual dismissal of the case and sanctioning of the Plaintiff, those facts fall far short of a judicial officer terming an attorney's conduct "the most reprehensible" he has seen in twenty-five years. The source and the words used make this a particularly damaging accusation; if Magistrate Smith did not make the statement, McDonald, who was present at the hearing, had no basis for embellishing upon the truth by misquoting the magistrate. The jury obviously believed Magistrate Smith's denial, and the circumstantial evidence is more than sufficient to support a finding of malice. See St. Amant v. Thompson, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968) (reciting circumstances which support a finding of malice); Hunt v. Liberty Lobby, 720 F.2d 631, 643–45 (11th Cir.1983) (discussing additional circumstances).

■ McDonald lost a similar credibility battle with respect to issue number 2. This issue concerned David Smith's alleged "fixing" of a DUI charge on behalf of Carl Staley, who, according to McDonald's letter, later received a permanent leg injury from an accident which occurred while Staley was intoxicated. Carl Staley and David Smith testified that Smith never represented Staley on a DUI charge, much less "fixed" one. Although Staley was involved in a 1975 automobile accident, he stated that he had no permanent injury and was not intoxicated at the time.

In contrast, McDonald testified that the "three witnesses" to the "fixing" were himself, his wife, and his former wife. McDonald stated that Staley had related the "fixing" incident to McDonald's former wife in 1975, and repeated it to McDonald and his wife, Catherine, over a business lunch. Catherine McDonald's testimony supported McDonald's version of events. Staley admitted that he had eaten lunch with the McDonalds, but denied that he had ever told them or anyone else that David Smith had "fixed" criminal charges against him.

As with the quote attributed to Magistrate Smith, the jury obviously believed Carl Staley and disbelieved Robert McDonald. Once the jury made this credibility determination and found McDonald's assertion untrue, McDonald's knowledge of falsity or reckless disregard thereof is easily inferrable. The evidence is again susceptible to the interpretation that McDonald took a kernel of truth and fabricat-

ed it into perhaps the most harmful of his accusations. *See St. Amant*, 390 U.S. at 732, 88 S.Ct. at 1326. Accordingly, the court finds that the jury's verdict on issue number 2 was supported by clear and convincing evidence.

With the propriety of the verdict on issues 1, 2, and 10 thus established, issues 3, 5, 6, 7, and 8 become largely irrelevant.[3] The jury's negative answers to issues 4 and 9 indicate that they understood their instructions and gave each issue careful, individual consideration. With respect to McDonald's most damaging statements, the evidence presented questions of credibility which were resolved against McDonald. The motion for judgment n.o.v. will be denied.

## II. *Damages and Remittitur*

### A. Compensatory damages

To recover compensatory damages exceeding a nominal sum, under North Carolina law a libel plaintiff must prove both the fact and extent of his injuries by a preponderance of the evidence. *R.H. Bouligny, Inc. v. United Steelworkers of America, AFL-CIO*, 270 N.C. 160, 170, 154 S.E. 2d 344, 354 (1967); *Jones v. Hester*, 262 N.C. 487, 488, 137 S.E.2d 846, 847 (1964). Compensatory damages include: (1) pecuniary loss; (2) physical pain and inconvenience; (3) mental suffering; and (4) injury to reputation. *Roth v. Greensboro News Co.*, 217 N.C. 13, 23, 6 S.E.2d 882, 889 (1940). The jury was so instructed, after which it awarded Smith $50,000.00 in compensatory damages.

■ In urging the court to remit Smith's compensatory damages to the nominal sum of $1.00, McDonald attacks Smith's proof as to each of the above items. First, he contends that Smith proved no financial harm, since Smith's income after the libel

was greater than that of a United States Attorney and since Smith was able to purchase a luxury car. Many of Smith's witnesses testified to his good reputation and high character; therefore McDonald argues Smith proved no reputational harm. Finally, McDonald discounts Smith's physical and emotional injuries because Smith never consulted a doctor nor took medication.

McDonald's arguments ignore much of Smith's evidence regarding his damages. Most importantly, Smith testified that the letters caused him great anger, embarrassment, and humiliation, especially when he discussed them with McDonald's named references to obtain their affirmance or denial. He stated that the process of refuting the letters made him increasingly self-conscious and caused him to lose confidence in himself. Similar proof of embarrassment, humiliation, and psychological effects has sufficed to support a verdict of twice the amount awarded here. *See Time, Inc. v. Firestone*, 424 U.S. 448, 460-61, 96 S.Ct. 958, 968-69, 47 L.Ed.2d 154 (1976) (allowing award of $100,000.00 for plaintiff's anxiety and concerns caused by the libel, but vacating judgment of the Florida state court for lack of finding on issue of fault on the defendant's part); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974) (recognizing personal humiliation and mental anguish as "customary" types of harm). Like the Court in *Time*, this court has "no warrant" to reduce arbitrarily the jury's verdict. *Time*, 424 U.S. at 461, 96 S.Ct. at 968.

Moreover, Smith testified that the stress and anxiety incident to refuting the letters caused him to sleep poorly and contributed to minor health problems. He also testified that after the letters became known

---

3. Upon reviewing the evidence, the court agrees with the Defendant that the statements which became issues 6 and 7 were substantially true, and serious questions exist as to whether the statements that became issues 3 and 8 were false or were made with malice. As to issue number 5, involving the use of the word "blackmail," the court merely notes that whether this sentence is fact or opinion depends mainly on

its context, and the sentence goes on to allege that "thereafter the crucial evidence was withheld." *Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970); *Potomac Valve*, 829 F.2d at 1287-88. However, since McDonald's liability is adequately established under issues 1, 2, and 10, the court need not and does not decide these questions.

fewer clients called, and that his earnings decreased from $63,000.00 in 1981 to $39,000.00 in 1982. Finally, Smith established damage to reputation by stating that he hears references to the letters to this day, and that people occasionally stop him and ask him how to "fix" a DUI charge. Smith's failure to seek medical attention and his parade of lawyers testifying to his good character go to the weight, not the substance, of his evidence regarding damages.

■ The author of a defamation is liable for damages "directly and proximately" caused, including damages from secondary publication if such repetition is the "natural and probable consequence" of his act. *Gillis v. The Great Atlantic & Pacific Tea Co.*, 223 N.C. 470, 476, 27 S.E.2d 283, 287 (1943). Although McDonald mailed his libelous missives only to a few officials, their wider circulation among politicians, eventual discovery by Smith, and Smith's efforts at refutation were probable and foreseeable consequences. Having presented evidence of the resultant mental suffering, physical inconvenience, financial impact, and injury to reputation, Smith is entitled to compensatory damages as found by the jury.

### B. Punitive damages

Since both federal and state law recognize that the amount of punitive damages can be excessive, the $150,000.00 assessment of punitive damages is the most troubling issue before the court. After careful consideration of the factors which bear on the appropriateness of punitive damages, the court concludes that any reduction would constitute the arbitrary substitution of the court's judgment for the jury's. Consequently, the punitive damages shall stand as awarded.

Under North Carolina law, punitive damages may be imposed for libelous statements when the plaintiff proves that the defendant acted with *New York Times* malice. *Ward v. Turcotte*, 79 N.C.App. 458, 461, 339 S.E.2d 444, 447 (1986); *Cochran v. Piedmont Publishing Co., Inc.*, 62 N.C. App. 548, 549, 302 S.E.2d 903, 904, *disc.*

*rev. denied*, 309 N.C. 819, 310 S.E.2d 348 (1983), *cert. denied*, 469 U.S. 816, 105 S.Ct. 83, 83 L.Ed.2d 30 (1984). Punitive damages "commensurate with the injury" are allowable to punish the defendant for his culpable motives and to deter him and others from similar acts. *Cotton v. Fisheries Products Co.*, 181 N.C. 151, 152–53, 106 S.E. 487, 488 (1921); *Shugar v. Guill*, 304 N.C. 332, 335, 283 S.E.2d 507, 509 (1981). Evidence of the defendant's financial condition is also relevant to this issue. *Roth*, 217 N.C. at 19, 6 S.E.2d 882. Although the decision to award punitive damages, and the amount allowed, rest with the sound discretion of the jury, the amount "may not be excessively disproportionate to the circumstances of contumely and indignity present." *Cotton*, 181 N.C. at 153, 106 S.E. 487.

Motivated primarily by first amendment considerations, the federal courts have long expressed a comparable concern with excessive punitive damages in libel cases. In *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), the plaintiff received $25,000.00 in compensatory damages and $725,000.00 in punitive damages; although the latter was reduced $250,000.00 on remittitur, the appellate courts reversed for failure to apply the *New York Times* standard. Seeking only to vacate the award, Justice Harlan opined that the first amendment requires that punitive awards bear a reasonable and purposeful relationship to the actual harm done, with the defendant's resources and the publication's potential for harm also deserving consideration. *Rosenbloom*, 403 U.S. at 75–77, 91 S.Ct. at 1835–36 (Harlan, J., dissenting). In the same case, Justice Marshall went so far as to suggest that punitive damages should be eliminated in the libel context. *Rosenbloom*, 403 U.S. at 84, 91 S.Ct. at 1839 (Marshall, J., dissenting); *compare Curtis Publishing Co. v. Butts*, 388 U.S. 130, 160, 87 S.Ct. 1975, 1994, 18 L.Ed.2d 1094 (1967) (plurality opinion of Harlan, J.) ($60,000.00 compensatory award and $3,000,000.00 punitive award reduced to total award of $460,000.00 on remittitur; such judicial control adequately

serves the constitutional guarantee of freedom of speech).

The Fourth Circuit adopted part of Justice Harlan's test in *Appleyard v. Transamerican Press, Inc.*, 539 F.2d 1026 (4th Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977). Appleyard, a public figure, proved malice on the part of a magazine which published articles suggesting his dishonesty. The jury awarded $10,000.00 compensatory damages and $75,000.00 punitive damages, but the trial court cut the punitive award to $5,000.00 by remittitur. The circuit court affirmed, finding that the punitive award, as remitted, was not "excessive in relation to the [article's] potential harm." *Appleyard*, 539 F.2d at 1030. The court noted, however, that an excessive award might present first amendment problems because of its inherent chilling effect on vigorous criticism of public officials. *Id.; see also Hudnall v. Sellner*, 800 F.2d 377, 382 (4th Cir.1986) (although not a first amendment case, the court in affirming a defamation award of $420,000.00 in compensatories and $650,000.00 punitives found excessiveness contention "worrisome"), *cert. denied sub nom. Sellner v. Panagoulis*, 479 U.S. 1069, 107 S.Ct. 960, 93 L.Ed.2d 1008 (1987).

In sum, state law directs the court to conduct an excessiveness review based on the wealth of the defendant, the injury and indignity present, and the goals of punishment and deterrence. Federal law counsels a constitutionally-grounded examination based upon the libel's harm, actual and potential, and upon the potential chilling effect of the verdict. Applying all of these considerations, the court concludes that the $150,000.00 award is within acceptable limits.

The primary concern here, as it has been throughout the case, is the proper balance between first amendment interests and a citizen's interest in preserving his reputation. The accommodation between these competing values in the *New York Times* standard for liability has continuing relevance in determining that liability's limits. McDonald, even in communicating with the President, enjoys no right to commit libel, *McDonald v. Smith*, 472 U.S. 479, 485, 105 S.Ct. 2787, 2791, 86 L.Ed.2d 384 (1985), and "there is no constitutional value in false statements of fact." *Gertz*, 418 U.S. at 340, 94 S.Ct. at 3007. The chilling effect of punitive damages is substantially reduced by the hurdle of *New York Times* malice which the Plaintiff had to overcome to reach the jury on this issue. Although the court believes that treble the compensatory damages is perhaps as much as the first amendment can tolerate, under the circumstances of this case it cannot say that such a punitive award is so inherently chilling as to require a remittitur.

Moreover, the actual and potential harm involved here counsel against a court-imposed reduction. Smith's embarrassment, humiliation, emotional distress, and reputational damage are significant. And McDonald's letters, containing damaging accusations which were reinforced by names, dates, and references, had the potential to cause even greater harm. McDonald professed no desire to ruin Smith's career (hence the limited number of addressees), but a wider circulation was almost inevitable. Although the impact of the letters diminished as numerous references denied the letters' statements, the letters initially appeared credible and few people (aside from Smith and Congressman Johnston, who had recommended him) would have taken, or did take, time to investigate. In view of the letters' troublesome possibilities, tripling the compensatory award is not overly punitive or disproportionate for deterrence purposes.

Finally, the minimal evidence regarding McDonald's financial condition does not persuade the court to override the jury's verdict. At trial McDonald testified that he was a college graduate and had held various executive positions before establishing his own business. At the time the letters were written, McDonald owned Colonial Schools, a company which operated three pre-schools in the Middle District and generated $500,000.00 per year in revenue. This evidence, such as it was, suggested a man of some means.

In contrast, McDonald submitted a post-trial affidavit stating that he is unemployable, has $44,000.00 in unpaid legal bills, and owns a single asset with his wife—their home. Even when this post-trial evidence is considered, its credibility is questionable and the court can only guess as to McDonald's true financial situation. *See Hudnall*, 800 F.2d at 383 (upholding punitive damage award when faced with a similar lack of evidence).

The results of an excessiveness review vary with the circumstances of each case. In *Butts* the Supreme Court affirmed a punitive award approximately six and one-half times greater than the compensatory award, whereas in *Appleyard* the Fourth Circuit affirmed punitive damages equal to "only" one-half of the compensatory verdict. *Butts*, 388 U.S. at 161, 87 S.Ct. at 1994; *Appleyard*, 539 F.2d at 1030. Given the evidence of constitutional and common law malice and potential for harm present in this case, the court cannot say that the jury exceeded its permissible bounds in its punitive damage award.

## CONCLUSION

The right to petition one's government for redress of grievances, like other first amendment rights, does not confer immunity on the publication of malicious falsehoods. Since the jury's verdict was consistent with the evidence presented at trial and the law outlined in this opinion, the court will enter judgment in accordance with that verdict.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## JUDGMENT

This civil action came on for trial before the court and a jury during the week of May 16, 1988, and the issues having been duly tried and answered by the jury as follows:

Issue # 1:

"At a hearing on November 28, 1978, in the Middle District, Greensboro, N.C., presided over by the Honorable Herman Amasa Smith, U.S. Magistrate, re case II C–75–52G, David I. Smith's conduct was stated to be 'the most reprehensible conduct of any attorney to come before me in my 25 years on the bench.' Present at that hearing was Michael J. Lewis, Esq.; 285 Executive Park Boulevard, Winston Salem, N.C. 27103; phone (919) 765–8455."

| | |
|---|---|
| Question 1(a): Is this statement false? | Yes |
| | (Yes or No) |
| Question 1(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not? | Yes |
| | (Yes or No) |

(Go to Issue # 2)

Issue # 2:

"We have three witnesses to the 'fixing of a DUI charge filed against Carl R. Staley, 1516 Greenwood Terrace, Burlington, N.C., for a cash payment of $350.00. Thereafter, Staley, while driving intoxicated, had a near fatal auto accident that has left him with a permanent leg disability."

| | |
|---|---|
| Question 2(a): Is this statement false? | Yes |
| | (Yes or No) |
| Question 2(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not? | Yes |
| | (Yes or No) |

(Go to Issue # 3)

Issue # 3:

"You will find a newspaper clipping from the Alamance News which indicates the circumstances of the summary imprisonment of Dr. G.E. Koury, without resort to the subpoena power."

Question 3(a): Is this statement false? 

 Yes
 (Yes or No)

Question 3(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not? 

 Yes
 (Yes or No)

(Go to Issue # 4)

Issue # 4:

"Our corporation alleges criminal contempt by David I. Smith in that when he was attorney for the plaintiff in the above-noted case, he did, in fact, willfully withhold crucial evidence then in his possession that had been ordered to be produced by the court."

Question 4(a): Is this statement false? 

 No
 (Yes or No)

Question 4(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not? 

 (Yes or No)

(Go to Issue # 5)

Issue # 5:

"Defendants, early in the case, refused to pay blackmail solicited by David I. Smith, and thereafter the crucial evidence was withheld."

Question 5(a): Is this statement false? 

 Yes
 (Yes or No)

Question 5(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not? 

 Yes
 (Yes or No)

(Go to Issue # 6)

Issue # 6:

"Les Burke—Vernon, Vernon, and Wooten
 522 South Lexington Avenue
 Burlington, NC 27215
 (919) 227–8851
Mr. Burke verifies that Smith is a liar."

Question 6(a): Is this statement false? 

 Yes
 (Yes or No)

Question 6(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not? 

 Yes
 (Yes or No)

(Go to Issue # 7)

Issue # 7:

> "Tip Messick—Messick, Mesick, and Messick
> Wachovia Building
> Burlington, NC 27215
> (919) 226–2436
> Mr. Messick verifies unethical conduct by Smith and had filed a grievance with the North Carolina State Bar, Raleigh, N.C., in 1980."

Question 7(a): Is this statement false?

_____Yes_____
(Yes or No)

Question 7(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not?

_____Yes_____
(Yes or No)

(Go to Issue # 8)

Issue # 8:

> "Mitchell McIntire
> 103 West Elm Street
> Graham, NC
> (919) 228–1341
> Mr. McIntire verifies that David Smith has been dishonest in a matter involving false representation of the filing of an 'upset' bid in a property settlement case."

Question 8(a): Is this statement false?

_____Yes_____
(Yes or No)

Question 8(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not?

_____Yes_____
(Yes or No)

(Go to Issue # 9)

Issue # 9:

> "The court record in U.S. Middle District # C75–52G is replete with false statements by David Smith. You are referred to a 'motion to continue', wherein he alleged hardship due to the fact that he was in solo practice and had to attend a conference in Houston. In fact Smith had a partner, co-counsel John B. Patterson, who also signed the complaint. The fact that Patterson continued as counsel of record for 15 months after Smith was dismissed stands as mute evidence of Smith's lie. Additionally on the record, 12/30/75 deposition of C.S. Richardson, Smith stated that C.S.R. had presented him with discovery per the court order of the same date, stated it was at his office, and that he would present it to counsel for defendant without further subpoena. It was never presented and delayed proceedings for nearly 1½ years beyond Smith's dismissal."

Question 9(a): Is this statement false?

_____Yes_____
(Yes or No)

Question 9(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not?

_____No_____
(Yes or No)

(Go to Issue # 10)

Issue # 10:

"The above conduct was in part that which U.S. Magistrate Herman Amassa Smith referred (11/28/78) to as 'the most reprehensible conduct of any attorney appearing before me in his 25 years on the bench.'"

Question 10(a): Is this statement false?

<u>Yes</u>

(Yes or No)

Question 10(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not?

<u>Yes</u>

(Yes or No)

(If you answered "yes" and "yes" to questions (a) and (b) under any issue, go on to Issues # 11 and 12. If you answered "no" to either question (a) or question (b) in each and all of Issues 1 through 10, stop here and do not go to any other issue.)

Issue # 11:

What amount of damages, if any, is the Plaintiff entitled to receive as compensatory damages?

<u>$50,000.00</u>

(Amount)

(Go to Issue # 12)

Issue # 12:

What amount of damages, if any, is the Plaintiff entitled to recover as punitive damages?

<u>$150,000.00</u>

(Amount)

APPENDIX A

ISSUES

Issue # 1:

"At a hearing on November 28, 1978, in the Middle District, Greensboro, N.C., presided over by the Honorable Herman Amasa Smith, U.S. Magistrate, re case II C-75-52G, David I. Smith's conduct was stated to be 'the most reprehensible conduct of any attorney to come before me in my 25 years on the bench.' Present at that hearing was Michael J. Lewis, Esq.; 285 Executive Park Boulevard, Winston Salem, N.C. 27103; phone (919) 765-8455."

Question 1(a): Is this statement false?

<u>Yes</u>

(Yes or No)

Question 1(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not?

<u>Yes</u>

(Yes or No)

(Go to Issue # 2)

Issue # 2:

"We have three witnesses to the 'fixing of a DUI charge filed against Carl R. Staley, 1516 Greenwood Terrace, Burlington, N.C., for a cash payment of $350.00. Thereafter, Staley, while driving intoxicated, had a near fatal auto accident that has left him with a permanent leg disability."

Question 2(a): Is this statement false? Yes
 ──────────
 (Yes or No)

Question 2(b): If so, was it published with knowledge of its
 falsity or with reckless disregard of whether
 it was false or not? Yes
 ──────────
 (Yes or No)

(Go to Issue # 3)

Issue # 3:

"You will find a newspaper clipping from the Alamance News which indicates the circumstances of the summary imprisonment of Dr. G.E. Koury, without resort to the subpoena power."

Question 3(a): Is this statement false? Yes
 ──────────
 (Yes or No)

Question 3(b): If so, was it published with knowledge of its
 falsity or with reckless disregard of whether
 it was false or not? Yes
 ──────────
 (Yes or No)

(Go to Issue # 4)

Issue # 4:

"Our corporation alleges criminal contempt by David I. Smith in that when he was attorney for the plaintiff in the above-noted case, he did, in fact, willfully withhold crucial evidence then in his possession that had been ordered to be produced by the court."

Question 4(a): Is this statement false? No
 ──────────
 (Yes or No)

Question 4(b): If so, was it published with knowledge of its
 falsity or with reckless disregard of whether
 it was false or not?
 ──────────
 (Yes or No)

(Go to Issue # 5)

Issue # 5:

"Defendants, early in the case, refused to pay blackmail solicited by David I. Smith, and thereafter the crucial evidence was withheld."

Question 5(a): Is this statement false? Yes
 ──────────
 (Yes or No)

Question 5(b): If so, was it published with knowledge of its
 falsity or with reckless disregard of whether
 it was false or not? Yes
 ──────────
 (Yes or No)

(Go to Issue # 6)

Issue # 6:

"Les Burke—Vernon, Vernon, and Wooten
 522 South Lexington Avenue
 Burlington, NC 27215
 (919) 227–8851
Mr. Burke verifies that Smith is a liar."

Question 6(a): Is this statement false? Yes

 _____
 (Yes or No)

Question 6(b): If so, was it published with knowledge of its
 falsity or with reckless disregard of whether
 it was false or not? Yes

 _____
 (Yes or No)

(Go to Issue # 7)

Issue # 7:

 "Tip Messick—Messick, Mesick, and Messick
 Wachovia Building
 Burlington, NC 27215
 (919) 226-2436
 Mr. Messick verifies unethical conduct by Smith and had filed a grievance with the North Carolina State Bar, Raleigh, N.C., in 1980."

Question 7(a): Is this statement false? Yes

 _____
 (Yes or No)

Question 7(b): If so, was it published with knowledge of its
 falsity or with reckless disregard of whether
 it was false or not? Yes

 _____
 (Yes or No)

(Go to Issue # 8)

Issue # 8:

 "Mitchell McIntire
 103 West Elm Street
 Graham, NC
 (919) 228-1341
 Mr. McIntire verifies that David Smith has been dishonest in a matter involving false representation of the filing of an 'upset' bid in a property settlement case."

Question 8(a): Is this statement false? Yes

 _____
 (Yes or No)

Question 8(b): If so, was it published with knowledge of its
 falsity or with reckless disregard of whether
 it was false or not? Yes

 _____
 (Yes or No)

(Go to Issue # 9)

Issue # 9:

 "The court record in U.S. Middle District # C75–52G is replete with false statements by David Smith. You are referred to a 'motion to continue', wherein he alleged hardship due to the fact that he was in solo practice and had to attend a conference in Houston. In fact Smith had a partner, co-counsel John B. Patterson, who also signed the complaint. The fact that Patterson continued as counsel of record for 15 months after Smith was dismissed stands as mute evidence of Smith's lie. Additionally on the record, 12/30/75 deposition of C.S. Richardson, Smith stated that C.S.R. had presented him with discovery per the court order of the same date, stated it was at his office, and that he would present it to counsel for defendant without further subpoena. It was never

presented and delayed proceedings for nearly 1½ years beyond Smith's dismissal."

Question 9(a): Is this statement false?

<u>Yes</u>

(Yes or No)

Question 9(b): If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not?

<u>No</u>

(Yes or No)

(Go to Issue # 10)

Issue # 10:

"The above conduct was in part that which U.S. Magistrate Herman Amassa Smith referred (11/28/78) to as 'the most reprehensible conduct of any attorney appearing before me in his 25 years on the bench.' "

Question 10(a):Is this statement false?

<u>Yes</u>

(Yes or No)

Question 10(b):If so, was it published with knowledge of its falsity or with reckless disregard of whether it was false or not?

<u>Yes</u>

(Yes or No)

(If you answered "yes" and "yes" to questions (a) and (b) under any issue, go on to Issues # 11 and 12. If you answered "no" to either question (a) or question (b) in each and all of Issues 1 through 10, stop here and do not go to any other issue.)

Issue # 11:

What amount of damages, if any, is the Plaintiff entitled to receive as compensatory damages?

<u>$50,000.00</u>

(Amount)

(Go to Issue # 12)

Issue # 12:

What amount of damages, if any, is the Plaintiff entitled to recover as punitive damages?

<u>$150,000.00</u>

(Amount)

SO SAY WE ALL.

<u>(s)Karen F. Geninger</u>

Foreperson of the Jury

May 20, 1988