**David I. SMITH, Plaintiff–Appellee,**

v.

**Robert McDONALD, Defendant–Appellant.**

No. 89–1401.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1989.

Decided Feb. 2, 1990.

Rehearing and Rehearing Denied En Banc Denied Feb. 28, 1990.

William Woodward Webb (Broughton, Wilkins, Webb & Gammon, Raleigh, N.C., on brief), for defendant-appellant.

219 Va. 455, 248 S.E.2d 135 (1978). *See Turner v. Bass,* 753 F.2d 342, 353 (1985).

William Albert Eagles (B.F. Wood, Latham, Wood, Eagles & Hawkins, Graham, N.C., on brief), for plaintiff-appellee.

Before RUSSELL and WIDENER, Circuit Judges, and TURK, Chief District Judge for the Western District of Virginia, sitting by designation.

WIDENER, Circuit Judge:

Robert McDonald appeals from judgment on a jury verdict in a libel case against him which awarded both compensatory and punitive damages. 713 F.Supp. 871. Because we conclude that McDonald's statements were absolutely privileged under the common law of North Carolina, we reverse.

Robert McDonald sent two letters to the President of the United States, with copies to a few other public officials, concerning David I. Smith, an attorney who actively was seeking to be appointed United States Attorney for the Middle District of North Carolina. McDonald's letters related what he said were numerous details about Smith's character and previous conduct that McDonald felt rendered Smith unfit to be United States Attorney. After the President chose not to appoint Smith, Smith instituted a common law action for libel in a North Carolina state court, alleging that the statements in McDonald's letters were "false, slanderous, libelous, inflammatory, and derogatory." In addition, Smith alleged that McDonald composed the letters maliciously and with evil intent.

McDonald removed the action to federal court on the basis of diverse citizenship, and subsequently filed a motion for judgment on the pleadings on the ground that his communications to the President were absolutely privileged under the petition clause of the first amendment and the appointments and speech or debate clauses of the United States Constitution. The district court denied the motion.[1] On appeal, both this court and the United States Su-

preme Court affirmed, finding that the Constitution conferred no absolute constitutional privilege on McDonald's letters, rather a qualified constitutional privilege under the petition clause of the first amendment, and the case was remanded to the district court.[2] Upon a trial by jury, a verdict was returned against McDonald in the amount of $50,000 compensatory damages and $150,000 punitive damages, which specifically found that some of the statements in McDonald's letters were both false and made with reckless disregard of whether false or not, the equivalent of malice. McDonald now appeals, arguing that his letters to the President were absolutely privileged under North Carolina common law.[3]

The parties tacitly agree that the common law of North Carolina governs this libel action. Accordingly, the parties not arguing otherwise, the substantive law of the forum controls, and we apply North Carolina law. See National Ass'n of Sporting Goods Wholesalers v. F.T.L. Marketing Corp., 779 F.2d 1281, 1284–85 (7th Cir.1985).

Whether the occasion is privileged is a question of law to be determined by the court. Stewart v. Nation–Wide Check Corp., 279 N.C. 278, 182 S.E.2d 410, 414 (1971). Privilege is determined by the occasion and circumstances surrounding a communication, and may be either "absolute" or "qualified." Ramsey v. Cheek, 109 N.C. 270, 13 S.E. 775, 775 (1891). The Supreme Court of North Carolina in Ramsey distinguished the two types of privileged communications as follows:

Privileged communications are of two kinds: (1) Absolutely privileged,—which are restricted to cases in which it is so much to the public interest that the defendant should speak out his mind fully and freely that all actions in respect to the words used are absolutely forbidden, even though it be alleged that they were

---

1. Smith v. McDonald, 562 F.Supp. 829 (M.D.N.C. 1983).

2. Smith v. McDonald, 737 F.2d 427 (4th Cir. 1984); McDonald v. Smith, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985).

3. Because we conclude that McDonald's statements were absolutely privileged under North Carolina common law, we need not consider McDonald's other assignments of error.

used falsely, knowingly, and with express malice. This complete immunity obtains only where the public service or the due administration of justice requires it, *e.g.*, words used in debate in congress and the state legislatures, reports of military or other officers to their superiors in the line of their duty, everything said by a judge on the bench, by a witness in the box, and the like. In these cases the action is absolutely barred. (2) Qualified privilege. In less important matters, where the public interest does not require such absolute immunity, the plaintiff will recover in spite of the privilege if he can prove that the words were not used *bona fide*, but that the defendant used the privileged occasion artfully and knowingly to falsely defame the plaintiff. In this class of cases an action will lie only where the party is guilty of falsehood and express malice.

*Ramsey*, 13 S.E. at 775 (citations omitted). Thus, although Smith has alleged, and a jury has found, that some of McDonald's communications were both false and malicious, if those communications were absolutely privileged, Smith's action for libel must fail.

Because "[t]he great underlying principle of the doctrine of privileged communications rests in public policy," *Alexander v. Vann*, 180 N.C. 187, 104 S.E. 360, 361 (1920), the settings that the *Ramsey* court identified in which communications are absolutely privileged were obviously by way of example rather than by way of limitation. And several subsequent cases have considered one of those settings in particular: statements made in the course of judicial proceedings. *See, e.g., Jarman v. Offutt*, 239 N.C. 468, 80 S.E.2d 248 (1954); *Jones v. City of Greensboro*, 51 N.C.App. 571, 277 S.E.2d 562 (1981); *Mazzucco v. North Carolina Bd. of Medical Examiners*, 31 N.C.App. 47, 228 S.E.2d 529, *petition for discretionary review denied and appeal dismissed for want of substantial constitutional question*, 291 N.C. 323, 230 S.E.2d 676 (1976).

In North Carolina the absolute privilege that attaches to statements made in the course of judicial proceedings is not confined to civil or criminal trials; in determining the scope of the privilege, courts have defined the term "judicial proceeding" broadly. *Harris v. NCNB Nat'l Bank of North Carolina*, 85 N.C.App. 669, 355 S.E.2d 838, 842 (1987). Thus, the privilege covers not only oral statements made during a trial, but has been extended to encompass communications in pleadings and other papers filed in a proceeding, *Scott v. Statesville Plywood & Veneer Co.*, 240 N.C. 73, 81 S.E.2d 146 (1954); out-of-court affidavits or reports, if submitted to the court and relevant to the proceedings, *Bailey v. McGill*, 247 N.C. 286, 100 S.E.2d 860 (1957); out-of-court statements between attorneys for the parties to a pending case, if relevant to the proceeding, *Burton v. NCNB Nat'l Bank of North Carolina*, 85 N.C.App. 702, 355 S.E.2d 800 (1987); and attorneys' out-of-court communications preliminary to proposed or anticipated litigation, *Harris v. NCNB Nat'l Bank of North Carolina*, 85 N.C.App. 669, 355 S.E.2d 838 (1987). In addition, communications made in the course of an administrative proceeding are absolutely privileged if the administrative officer or agency is exercising a judicial or quasi-judicial function. *Mazzucco*, 228 S.E.2d at 532. Although no North Carolina court has determined whether the actions of an appointing authority, in evaluating and selecting a nominee for an important public position, constitute a quasi-judicial function, the decision of the North Carolina Court of Appeals in *Angel v. Ward*, 43 N.C.App. 288, 258 S.E.2d 788 (1979), is instructive.

In *Angel* the North Carolina Court of Appeals considered whether a private citizen's letter to a federal government employee's superior, who was collecting evidence to support a decision to terminate the employee, was sent in connection with a quasi-judicial proceeding and thus was absolutely privileged. *Angel*, 258 S.E.2d at 791–92. In *Angel* the defendant, a certified public accountant, telephoned the supervisor of the plaintiff to complain about the plaintiff's conduct and competence in her position as an Internal Revenue Service agent. *Id.* at 789. After the plaintiff's supervisor asked the defendant to put his

complaints in writing, the defendant sent the supervisor a letter.[4] *Id.* at 789–90. Later, the plaintiff's supervisor terminated the plaintiff's employment, and the plaintiff filed suit in libel because of the contents of the letter.

In determining whether the defendant's letter was absolutely privileged, the *Angel* court noted that quasi-judicial is "[a] term applied to the action, discretion, etc., of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." *Id.* at 792 (quoting Black's Law Dictionary (4th ed. rev.1968)). The court in *Angel* then applied the definition of the term quasi-judicial to the facts of the case:

> Mr. Allen in his solicitation of defendants' letter was acting for and on behalf of the Internal Revenue Service in a governmental matter. He was in the process of evaluating plaintiff in connection with her employment. The agency had decided to terminate plaintiff's employment, and Mr. Allen was preparing an evidentiary file to support the termination decision.

*Id.* Thus, because the supervisor's actions were those of one who was "required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature," the court concluded that "[t]he proceeding was quasi-judicial in nature, and defendant's communications were absolutely privileged." *Angel*, 258 S.E.2d at 792. In reaching its conclusion, the North Carolina Court of Appeals in *Angel* relied in part on a previous decision of this court that applied North Carolina law, *Holmes v. Eddy*, 341 F.2d 477 (4th Cir.1965), a case which also merits further discussion.

In *Holmes* a stockbroker, Jay Eddy, received a letter in the mail from Hydramotive Corporation, a company that was seeking to market stock. *Holmes*, 341 F.2d at 478. On his own initiative, Eddy mailed the letter he had received from Hydramotive to the Securities and Exchange Commission, which at the time was investigating Hydramotive and others with respect to stock sales. Before mailing the letter, Eddy had written on the letter the following: "This company looks like an attempt to bilk the public via the securities market—it has a smell similar to all such." The SEC requested that Eddy execute an affidavit as evidence that the letter was sent to him through the mails in connection with the sale of stock, which Eddy did.

---

4. The North Carolina Court of Appeals in dicta in *Angel* noted that "[h]ad defendants merely mailed the letter to plaintiff's superiors, the communication would have been entitled to a qualified privilege." *Angel*, 258 S.E.2d at 791. An over literal reading of that statement might indicate that the privilege the defendant enjoyed in *Angel* hinged on the fact that the plaintiff's supervisor made an affirmative request for the information. In an attempt to be consistent with this factual element, McDonald argues that he sent the letters in issue in response to a televised speech in which the President-elect made a general call for information and cooperation from the citizenry. In our view, such an argument is unnecessary, although it may be valid.

The plaintiff in *Angel* was, at the time the communication was made, a current government employee. Because a supervisor does not constantly investigate and evaluate every current employee with an eye toward possible termination, the *Angel* court emphasized that the plaintiff's supervisor actually was investigating and evaluating the plaintiff and that the defendant's letter was solicited in connection with that investigation. Stated another way, evidence of the supervisor's ongoing investigation and solicitation of the letter in *Angel* was necessary to demonstrate that the supervisor was performing a quasi-judicial function in connection with the performance of his duty with respect to a particular employee, the plaintiff, at the time the defendant mailed the letter, and that the letter was not merely a complaint about the performance of a public employee and so entitled to qualified privilege. *See Ponder v. Cobb*, 257 N.C. 281, 126 S.E.2d 67, 76 (1962).

Similarly, in this case the President was in the process of investigating and evaluating potential employees with an eye toward hiring one of the applicants. We think there is no significant distinction between the firing of Angel and the hiring of Smith in the case before us. Because the President sought to appoint a new employee, just as if he had dismissed a current employee, he was performing an ongoing quasi-judicial function with regard to the entire pool of applicants and the solicitation of information concerning a particular applicant is immaterial.

The SEC then brought suit against Hydramotive and other related parties and eventually obtained an injunction against the sale of the stock.

At some point after the initiation of the SEC action, Hydramotive and others who were parties defendant to the securities action instituted actions for defamation against the SEC and numerous individuals, including Eddy, alleging that the defendants conspired to and did circulate publicly untruths about the plaintiffs. This court affirmed the district court's entry of summary judgment for all defendants. Our holding in that case with respect to the claim against Eddy, if not on precisely the same facts as here, is persuasive, even if not binding precedent.

We found that, although Eddy sent the letter with his notations on it on his own initiative, no claim being made that he acted other than as a private citizen, his actions in sending the letter and in executing the affidavit at the request of the SEC were absolutely privileged. Thus, even though the SEC was not a judicial body, and despite the fact that the SEC had not filed its suit when Eddy mailed the letter, we determined that Eddy's voluntary communication to the SEC was absolutely privileged, obviously because the communication was made in connection with a judicial or quasi-judicial proceeding. We equated the privilege accorded Eddy to that given a private person who furnishes information to a prosecutor for the purpose of initiating a prosecution.

We believe the circumstances of the instant case meet the definition of quasi-judicial, and therefore call for the application of absolute privilege, even more convincingly than did the facts in *Angel* and *Holmes*.

Pursuant to federal statute, the President must appoint, subject to the advice and consent of the Senate, a United States Attorney for each judicial district. 28 U.S.C. § 541(a). At the time McDonald sent his letters, the President and his staff were in the early stages of evaluating potential nominees for those positions. Nominees for United States Attorney are subjected to a comprehensive background investigation and are expected to appear before the Senate Judiciary Committee to answer any and all questions regarding their fitness for the position. It goes without saying that both the character and professional qualifications of a United States Attorney are of the greatest public relevance.

An application of *Angel*'s definition of quasi-judicial reveals that, in conducting the appointment process, the President was "required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for ... official action, and to exercise discretion of a judicial nature." *Angel*, 258 S.E.2d at 792. Moreover, the doctrine of privileged communications rests in public policy. *Alexander v. Vann*, 180 N.C. 187, 104 S.E. 360, 361 (1920). If public policy accords an absolute privilege to a letter sent to an IRS supervisor concerning the termination of a subordinate, and to a letter sent to the SEC concerning a securities offering, surely the President's selection of the chief law enforcement officer for a judicial district is a process in which the public interest demands the unbridled flow of information that absolute privilege can provide. In this context, the compelling need for truthful information concerning those who voluntarily seek important positions of public trust outweighs the possibility that, as may be the case here, the less than scrupulous will use such an occasion to disseminate malicious falsehoods in furtherance of a personal vendetta.

Therefore, because the President was performing a quasi-judicial function in which it was "so much to the public interest that all actions in respect to the words used are absolutely forbidden," *Ramsey v. Cheek*, 109 N.C. 270, 13 S.E. 775, 775 (1891), McDonald's letters were absolutely privileged and cannot support an action for libel.

The judgment of the district court is accordingly

REVERSED.